JOSEPH PARKER and ELIZABETH A., his wife,

*v.*

EDWARD SNYDER and LYDIA W., his wife.

To establish a trust resulting from the payment of purchase-money, the proof must, where the trust and the grounds of it are denied, be clear, and the case made by the proof must be substantially the same as that made by the bill.

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. A. C. Scovel,* and *Mr. W. W. Wiltbank* of Philadelphia, for complainants.

*Mr. A. Flanders,* for defendants.

THE CHANCELLOR.

The complainants, by their bill, seek to restrain the further prosecution of a suit (an action of *assumpsit*) brought by the defendant, Lydia W. Snyder, against the complainant, Elizabeth A. Parker, in the supreme court of this state, to recover $8,450, with interest, being the amount, in the aggregate, of the sums of money mentioned in four deeds from the defendants to Mrs. Parker, as the consideration of the conveyance of land thereby made to her.    They also pray an account of the dealings and transactions between Mrs. Parker and Mr. Snyder, in relation to the building of four houses on the lots of land described in those deeds respectively, the bill alleging that those houses were built by him for Mrs. Parker, and that the land whereon they were erected was held by Mrs. Snyder to the use of Mrs. Parker, and for the purpose of building the houses thereon for the latter by Mr. Snyder.    They also pray a conveyance by the defendants, to Mrs. Parker, of another lot of land described in the deed, and therein alleged to be held by Mrs. Snyder in trust for Mrs. Parker.

The bill alleges, in substance, that, on the 9th of October, 1875, the complainant, Joseph Parker, was the owner of an unimproved lot of land in the city of Beverly, in this state, having a frontage of about four hundred and thirty-six feet, which he valued at $1,200; that his wife was desirous of acquiring it for her separate estate, with a view to improving the property by the erection thereon of a number of houses, to be paid for out of her separate estate, and that she bought the property, and, with the consent of her husband, employed Mr. Snyder to erect buildings thereon, for

her and at her expense, he acting merely as her agent in the premises, for compensation to be paid by her to him, and that, to carry out her design, she proposed that her husband should convey the land to Mr. Snyder, but, at the request of the latter, she caused it to be conveyed to his wife.

The bill states that it was understood and agreed that Mrs. Parker was to entrust to Mr. Snyder $1,200 in money of her own estate, with which he was forthwith to pay to her husband the consideration ($1,200) of the conveyance of the land; that, on the 11th of October, 1875, she entrusted to him $1,200 of her own money accordingly, and he delivered it to her husband, and, in consideration thereof, the latter (she joining him in the deed, as his wife) duly conveyed the lot to Mrs. Snyder; that Mr. Snyder in the pretended execution of his agreement with her, as her agent and at her direction, built four houses on part of the lot; and that, on the completion thereof, but before the settlement or exhibition of his accounts, he and his wife, by the deeds before mentioned, conveyed the land upon which the houses were built, being part of the tract conveyed to Mrs. Snyder by the complainants as before mentioned, to Mrs. Parker. It further states that, on the 8th of November, 1876, Snyder directed a note (it appears to have been an order) to Mrs. Parker, requesting her to pay William E. Scudder & Co., merchants, doing business in Camden, $1,224.71, which, he represented to her, was due to them for materials furnished by them, on her account, to him, for the buildings; and that she agreed to pay them the amount of the order.

The bill alleges that the consideration moneys mentioned in the four deeds for the lots upon which the houses were built, were merely nominal, and were sums which were fixed upon as the entire cost of the premises to her, but not as a price agreed to be paid by her for the property.

The complainants allege, as an additional grievance, that Mrs. Parker is liable for the amount of the order before

Parker v. Snyder.

mentioned, while, at the same time, the Snyders are prose-cuting her for the full consideration money mentioned in the deeds.

On the other hand, the defendants, while they admit the conveyance by the Parkers to Mrs. Snyder, by the deed before mentioned, absolutely deny the trust, and allege that the money with which the land was purchased, was not the property of Mrs. Parker, but allege that the land was pur-chased by Mrs. Snyder for her own account, and was to be paid for, pursuant to an agreement between her and Mrs. Parker, with money due from the latter to her, part of the price ($4,500) which Mrs. Parker agreed to pay Mrs. Snyder as the consideration of the conveyance of another house and lot, in the neighborhood of and adjoining the four houses before mentioned, sold by the latter to her before the purchase of the land in question in this suit.

The answer states, also, certain previous transactions between these parties as to which the bill is silent. It alleges that, in the early part of the year 1873, more than two years before the conveyance by the complainants to Mrs. Snyder mentioned in the bill, Mrs. Snyder came to Beverly in search of a building lot, on which to erect a house for a home for her and her husband, intending to invest therein, or in a building thereon, money which she had received from the sale of certain real estate in Camden belonging to her husband; that she was directed to Mrs. Parker as a person having building lots to sell; that she called on the latter accordingly, and stated her object, and, shortly afterwards, Mrs. Parker called upon her, in Camden, for the purpose of inducing her to purchase some of her lots; that Mrs. Snyder then agreed to buy, and did buy, from Mrs. Parker a lot which was then part of a tract of which the land conveyed by the complainants to Mrs. Snyder, in October, 1875, was the residue; that, for part of the purchase-money of the property which Mrs. Snyder so bought in 1873, two mortgages, dated September 1st, 1873, were given by her and her husband, one to Mrs. Parker,

and the other to her husband, it being claimed that they each had an interest in the property, and Mrs. Snyder paid the balance of the consideration in money; that, immediately after the purchase, Mrs. Snyder built a dwelling-house on part of the land, entirely with her own money, and without any aid whatever from, or understanding with, Mrs. Parker in respect to the property or building; that, subsequently, she sold the house and lot to Mrs. Parker, taking, as $250 of the consideration, an adjoining lot of land, which, subsequently, was conveyed accordingly, by Mr. Parker to her. Out of the balance of the purchase-money Mrs. Parker was to pay off the mortgages (the mortgages before mentioned and another) upon the property, and the rest of the consideration was to remain in the hands of Mrs. Parker for her convenience, and was to be paid by her, from time to time, as she might be required by Mrs. Snyder to pay it—the latter not having immediate use for the money, but proposing to use it in building another house on the lot last mentioned; that Mrs. Snyder built a house upon that lot, and subsequently sold and conveyed the property to Mrs. Parker; that, at the time of the purchase of the second house and lot, Mrs. Snyder agreed to purchase an adjoining lot of about sixty feet front, for the consideration of $540, which Mrs. Parker was to pay out of the purchase-money of the last-mentioned house and lot; that that lot was conveyed to her accordingly, and she built thereon a house, called, in the testimony, the " double house," which, after it was completed, she sold to Mrs. Parker for $4,500, of which money $1,200 were to be paid by Mrs. Parker to her husband, for the lot of land mentioned in the bill conveyed in October, 1875, by the complainants to Mrs. Snyder.

The answer further admits that the order before mentioned, in favor of William C. Scudder & Co., ought to be computed and allowed to Mrs. Parker, if paid as part of the $4,500. It denies the entire equity of the bill except as to the order in favor of William C. Scudder & Co., alleging

that the purchase-money of the property in question and cost of building the houses was furnished, not by Mrs. Parker, but by Mrs. Snyder, and denying that the defendants, or either of them, was the agent or trustee of Mrs. Parker in any way whatever.

The conveyance of October 11th, 1875, by the Parkers to Mrs. Snyder, was an absolute conveyance, in fee-simple, for the consideration of $1,200 therein expressed. No trust is declared in the deed, nor is any evidenced by any writing. The complainants claim that a trust resulted to Mrs. Parker from the fact that, as they allege, she paid the purchase-money. To establish a trust resulting from the payment of purchase-money under such circumstances, the proof must, where the trust and the grounds of it are denied, be clear. *Groves* v. *Groves, 3 Y. & J. 163.* And the case made by the proof must be substantially the same as that which is made by the bill. *Andrews* v. *Farnham, 2 Stock. 91.*

By her affidavit annexed to the bill, Mrs. Parker swears that the consideration of the deed of October 11th, 1875, was paid by Mr. Snyder with her money, which, on that day, she entrusted to him for the purpose, and that he, as her agent, delivered that money to her husband accordingly, who forthwith executed and delivered to Mrs. Snyder the deed for the property. Such, too, is the statement of the bill. Her testimony, however, does not sustain this allegation, for she testifies that she herself paid in person to her husband the $1,200 for the lot, in twelve $100 notes. She says the circumstances of the case were, that she wanted the property and bought it, and that her husband could not convey it directly to her; that he conveyed it to Mrs. Snyder, and that she (Mrs. Parker) paid the money for the lot to her husband herself, and that neither Mr. or Mrs. Snyder was present at the time, though they knew she was going to pay the money. She adds that she had the money at their house on an occasion when she came up from Philadelphia and stopped there, as was her custom, and they saw it. When inquired of as to what she said, she answered

that Mrs. Snyder made the remark that it was a strange thing for a wife to pay her husband for ground. It will be perceived that her testimony as to the payment of the consideration of the deed is in contrariety to the statement of the bill and the affidavit annexed thereto. Nor does she offer any excuse for this manifest and important inconsistency, and there does not appear to be any. And it is all the more noteworthy because of the fact that she, in her bill, ignores all the previous transactions between her and Mrs. Snyder. It should be observed in this connection that her husband was not sworn as a witness. Both Mr. and Mrs. Snyder positively and explicitly contradict her *in toto* in the statements in her bill and testimony in reference to the payment of the consideration of the deed.

Nor is there any evidence to sustain either of her statements on the subject of the payment of the consideration. On the other hand, the evidence sustains the allegation of the answer on that head, that the consideration of the deed of October 11th, 1875, was allowed to Mrs. Parker in the settlement for the price of the double house and lot, and that she agreed to pay it for Mrs. Snyder accordingly. Mrs. Parker swears, indeed, that the consideration of the double house and lot ($4,500) was paid by her in full, and she produces an account rendered by Mrs. Snyder to her of payments made by her on account of that property. The first item in this statement is the sum of $3,905.33 cash. It appears by the account in the book of Mrs. Snyder, from which this account was taken, that in that amount were included a demand in favor of William C. Scudder & Co., and $1,200 for the price of the lot conveyed in October, 1875. Mrs. Parker says that she was present when that account was made, but does not remember what papers they had before them, except the paper containing the account delivered to her. She adds that it is very likely that Mrs. Snyder had her account-book with her at the time. She swears, however, that she never saw the book, nor any account which Mrs. Snyder had. The latter swears that

Parker *v.* Snyder.

not only did Mrs. Parker see the account in the book, but she proves Mrs. Parker's acquaintance with the book by showing some figures ($1,283.50) made by her in one of the accounts in it, and, when inquired of as to those figures, whether they were hers or not, Mrs. Parker does not deny them. She professes to be entirely unable to state how the $3,905.33 was paid. She says: "I can't tell, to save my life, now, how it was made up; all I had was the statement exhibited, and all I know of the settlement is what was on that." To the question, "Did you keep any account of the moneys you paid to the Snyders on the $4,500 house?" she replied: "I don't think I did," and she adds that the settlement was made a few days after she received the deed for the double house and lot, which was, she says, on or about the time it bears date, July 22d, 1875, and that the settlement was made before she purchased the $1,200 lot of Mr. Parker, which, she says, was about the time the deed for it bears date, the 11th of October, 1875.

On the other hand, the defendants testify that the settlement for the double house was not made until the 3d of April, 1876. There is corroboration of their testimony in the fact that Mrs. Parker produces a receipt, drawn by her and signed by Mrs. Snyder, dated April 3d, 1876, acknowledging the receipt of $4,500, in full settlement of the price of the double house, and in full of all demands up to that date. Mrs. Snyder swears that the receipt was given at the time of the settlement. Mrs. Parker, indeed, swears that it was not given until long afterwards; but the preponderance of evidence is in corroboration of Mrs. Snyder's statement. She says that the $3,905.33 included a demand of William C. Scudder & Co. against Snyder, for $1,606.13, which Mrs. Parker was to pay for her. It is evident, from the testimony, that she is right. It is proved that Mrs. Parker paid that amount, in full of Snyder's account with that firm to date, on the 6th of October, 1875, about two months after the date of the conveyance of the double house and lot to her. Mrs. Parker says she thinks this

money was not paid on account of the price of the double house and lot; but she is evidently in error on that point. According to her statement, she paid the price of the land bought in October, 1875, after she received the deed for the double-house property, which, as before stated, was in July, 1875. It seems to have been allowed to her in the settlement of the purchase-money of the double house and lot. There is other evidence, also, besides that before referred to, that she is mistaken as to the time when the settlement was made.

In the effort to establish the trust upon which the equity of the bill is founded, the burden is upon the complainants, and, in this connection, it is impossible to overlook the variance between the allegations of the bill and the testimony of Mrs. Parker. While, on the one hand, the complainants produce witnesses to testify to expressions made use of by the defendants, tending to the recognition of the proprietorship of Mrs. Parker in the houses, while they were being built, and produce proof of contributions of materials &c. to the buildings by her, that evidence is by no means irreconcilable, under the circumstances, with the claim of ownership made by Mrs. Snyder. On the other hand, the defendants prove that Mrs. Parker stated that Mr. Snyder had bought the land from her (Mrs. Parker's) husband; also, that she expressed herself as undecided whether to purchase the houses which the Snyders were building; also, that, after the purchase of some of the houses, she threatened to "throw up the purchase"; that she expressed regret that she had taken the houses, and that she and her husband sought, by application to the municipal authorities of Beverly, to escape from paying the tax which, in 1875, was assessed against her for the property conveyed in October, 1875, to Mrs. Snyder, on the ground that neither Mr. nor Mrs. Parker owned the property, but failed, because the tax was imposed before the conveyance to Mrs. Snyder.

Parker v. Snyder.

I deem it unnecessary to discuss the testimony at greater length. It seems evident that, in the beginning of the transactions between these parties, the Snyders invested their money in a house and lot, wholly on their own account, the title to the property being taken by the wife; that that property was then sold to Mrs. Parker, who, in the purchase, found the opportunity for selling another lot to them, to be improved by them, and so on through the transactions, until the last purchase. It was advantageous to the Snyders to give to Mrs. Parker easy terms of payment, for they were thus enabled to sell their property. And those terms were, obviously, advantageous to Mrs. Parker. They gave her an opportunity to find a purchaser for the property before she would be required to pay for it. Besides, in the transactions, she was exchanging, in part payment for improved property, her or her husband's unimproved property. In her bill, Mrs. Parker leaves out of sight all these transactions prior to the conveyance of October, 1875, and deals with that as if it were the only one, and had no connection with the former ones. The connection between them, however, is very significant. It seems clear that Mrs. Snyder was understood, between them, to be the purchaser of the lots as and when they were conveyed to her; and that the buildings erected thereon were erected by her or by her husband, on her or his account, and not on account of Mrs. Parker; and that Mrs. Parker was, and considered herself to be, entirely at liberty to purchase the houses and lots or not, just as she saw fit. She is entitled to no relief. Her bill will, therefore, be dismissed, with costs.