CLARA K. LIPP, executrix, &c., appellant,

*v.*

BENJAMIN H. FIELDER, et al., respondents.

[Submitted December 11th, 1906. Decided February 2d, 1907.]

1. Where a plaintiff sued in his lifetime to compel specific performance
of an alleged verbal promise by his wife that on the death of either cer-
tain land which complainant had purchased in her name should become
the land of the survivor, the wife's executor being a necessary party in
his representative capacity, both because he had a power of sale under
the wife's will and because he might need the proceeds of a sale of the
property to pay debts, the husband was not a competent witness, under
*P. L. 1900 p. 362,* excluding a party as a witness, where the opposite
party is sued in a representative capacity.

2. Complainant purchased certain land with his own money, but caused
it to be conveyed to his wife to prevent his children by a former marriage
from obtaining the same at his death. On the death of the wife he sued
to establish a trust in the same, and that if one died the other would get
the property.—*Held*, that the evidence was insufficient to rebut the pre-
sumption that the wife took the property by irrevocable gift.

3. Evidence *held* insufficient to establish a contract by which a wife
agreed to make an irrevocable will in her husband's favor.

---

On appeal from a decree of the court of chancery, advised by
Vice-Chancellor Stevens, who filed the following opinion:

This is a suit which was begun by William C. Lipp in his life-
time for the purpose of compelling the specific performance of
an alleged verbal promise made to him by his deceased wife, that
at the death of either of them certain land which he had pur-

chased in her name should become the land of the survivor. He has since died, but not before he gave his testimony in reference to the alleged agreement. The defendants to the bill are Benjamin H. Fielder, Jr., executor of the wife, and the Lakewood Library Association, her devisee.

I think that, without the testimony of the deceased complainant, the allegations of the bill, either in its original or amended form, are not satisfactorily proved. The first question is, therefore, whether the complainant is a competent witness under that provision of the Evidence act which excludes a party from being sworn as a witness where the opposite party is sued in a representative capacity. The complainant testified shortly before the new Evidence act took effect (*P. L. 1900 p. 362*), but that does not make any difference in this case. Under *Kempton* v. *Bartine, 59 N. J. Eq. (14 Dick.) 149; 60 N. J. Eq. (15 Dick.) 411,* and *Wyckoff* v. *Norton, 60 N. J. Eq. (15 Dick.) 478,* the executor is a necessary party. In any view, he is a proper party. He has, in fact, been made a party in his representative capacity, both because he has a power of sale under the will, and because, as is said by Vice-Chancellor Grey in the case above cited, he may, as executor, need the proceeds of sale to pay the testatrix's debts. Inasmuch as the executor and devisee are really, as well as formally, on the same side, are equally interested in resisting the complainant's claim, and will both be injuriously affected by the establishment of that claim, it seems to me that *Hodge* v. *Coriell, 44 N. J. Law (15 Vr.) 456; 46 N. J. Law (17 Vr.) 354,* applies. The record is conclusive and prevents the complainant from testifying against either defendant, because that record shows that on the defendant side there is a party being sued in a representative capacity. This renders it unnecessary for me to consider whether a devisee is a party sued in a representative capacity where the suit is based upon the contract of the ancestor, which, it is alleged, binds the devisee or affects the lands devised to him, a point upon which there is a conflict of authority.

Without this testimony I think that the *Duvale Case, 54 N. J. Eq. (9 Dick.) 581; 55 N. J. Eq. (11 Dick.) 376,* is not applicable.

The complainant, Lipp, was a farmer. On April 14th, 1869, the Bricksburg Land Company, for the consideration of $1,080, agreed to convey to him a tract of land near Lakewood, containing thirty-six acres. In February, 1871, the company, instead of conveying it to him, conveyed it to his wife Joanna. They had been married in May, 1866, and on August 23d, 1868, Joanna had executed a will by which she gave all the property then possessed by her, or of which she might thereafter become possessed, to her husband. The evidence indicates that her husband had made a similar disposition in her favor at the same time. In point of fact, neither of them, at that time, possessed property of any considerable value, except a mortgage which the wife held, and from which she appears to have realized $500.

The complainant's insistment is that at the time of the conveyance of the tract in controversy to his wife, it was verbally agreed between them that the property should be his if he survived her. Outside of his own evidence, which must be disregarded, the witness chiefly relied upon is Abraham Daily, a Brooklyn lawyer. He says that in a conversation, had between himself and Mr. and Mrs. Lipp at the dinner table, sixteen or seventeen years before he testified,

"it was stated that Mr. Lipp' had purchased that property, taking the title in the name of his wife, so that if anything should happen to him certain relatives whom he had in California would not come on and disturb her; that an agreement had been made between them that she, on her decease, was to leave a will giving the property to him, so that he would have a home if he outlived her."

He says, further, that the question came up whether under Mrs. Lipp's will, as then made, the property subsequently acquired would pass, and he said "that there would be no necessity for drawing an additional will as long as that will was made to cover any subsequent purchased property." He says distinctly, on cross-examination, that the agreement referred to preceded, as he understood, the making of the wills. These wills, as I have said, were made nearly three years before the deed was actually delivered.

The statement was the complainant's statement to him, and not his wife's although made in her presence. It was not made

in a professional interview, but casually, at the dinner table, six-teen or seventeen years before the witness testified. Assuming, however, it to be a perfectly correct version of what was said, and assuming, moreover, that because not contradicted by the wife at the time she must be deemed to have admitted its truth, it neither shows a binding promise to dispose of the land by will, nor does it show a resulting trust.

It is said in *Duvale* v. *Duvale, supra,* that when lands are pur-chased by one person who pays the purchase price, and they are conveyed to another person who is a stranger, a trust in the land is implied and results in favor of him who has paid the con-sideration. But that where a husband purchases and pays for lands and takes the title in the name of his wife, a presumption arises that the husband has caused the conveyance to be made by way of settlement upon her, and that this presumption will only be overcome by clear proof to the contrary.

As I have said, Mr. Daily testifies that he understood that the agreement preceded the making of the wills. Now, as Vice-Chancellor Reed said in *Duvale* v. *Duvale, 54 N. J. Eq. (9 Dick.) 588,* a verbal agreement to exchange wills would not, so far as land was concerned, be binding, because of the provisions of the statute of frauds. The making of the wills themselves would not be part performance. Either party could revoke at pleasure, unless restrained by binding contract, and such con-tract, if it had reference to land, must have been in writing. Up to the time of the conveyance, therefore, neither party was bound. Then came the conveyance. Now, this conveyance, standing by itself, even assuming as the evidence indicates that it was paid for by the husband's money, would, under the opera-tion of the rule above stated, import a gift to or settlement upon the wife. This being its import, how, in the absence of any agreement then made, could it be regarded as proof that the wife thereupon became bound by contract to devise the land to her husband; that her will, up to that time revocable, now, because her husband made her a gift, became irrevocable. Such an insistment seems to me to be little short of absurd.

But how does the matter stand upon the notion of a result-ing trust? The presumption is, in the case of a wife, against a

resulting trust. It must be shown, clearly and satisfactorily, that a resulting trust was intended. Here we have no proof of any agreement relating to the matter, or even of any admission of facts from which such agreement could be inferred. A verbal agreement relating to a will that she had made, three years before, having no reference to that particular land, is certainly not proof of such agreement. The transactions have no inherent relation to each other; they are severed in point of time, and they are not connected by evidence. There is no express proof that it was agreed that Mrs. Lipp was to hold the land as trustee, and it cannot be reasonably inferred that she then irrevocably bound herself to do so, because three years before she had made a revocable will. Mrs. Lipp's title was evidenced by a regular deed, made at her husband's instance and duly recorded. It declared, in terms, that she was to hold for her *own* use. Public policy requires that such a conveyance should have its proper effect, unless there is convincing proof to the contrary.

The other evidence produced by complainant amounts to little more than the admission by the wife of that which was the undoubted fact, viz., that she had made a will in her husband's favor and that under this will he would take at her death. Several of complainant's witnesses testify that the reason both Mr. and Mrs. Lipp gave for putting the title in her name was that his children by his first wife would be thereby prevented from getting the property. That he did not wish to provide for them appears from the fact that in January, 1899, he, by his last will, left all his property to his niece, the present complainant. The result of the evidence, outside of the husband's, seems to be this: That he wanted to secure his wife in the possession of the property in his lifetime by a decisive act which his children, by his first wife, could not nullify, and that having, at that time, entire confidence in her, he was willing to trust her sense of right to leave him the property by will if she died first. It was not until twenty years afterwards that they quarreled.

Mrs. Daily testifies that Mrs. Lipp told her that Mr. Lipp had bought the property with his money and put it in her name so that she would be protected, but that she had made a will and

left it all to him. Mr. Marston says he heard them say that if one died the other would get the property. Clara Lipp, the present complainant, Mr. Lipp's devisee, goes further. She says that on one occasion Mrs. Lipp said that her husband had put the deed in her name so that if anything should happen his children would not cause trouble: "that they had an agreement that whoever should die first the other should take the property." In her conversation with this witness it would appear that Mrs. Lipp admitted an agreement—but what agreement? If the reference is to the agreement to make mutual wills, it is disposed of by what has already been said. If to some other agreement, when and where and under what circumstances was it made? Was it supported by a consideration? Was it in writing or was it merely verbal? Without information on these important points it is impossible to say whether or not an obligation arose or a trust resulted. This witness, whose interest in the result is apparent, does not give us any information about them. A statement so indefinite can hardly avail to overcome the evidence of the deed, and be deemed satisfactory proof of the allegations of the bill.

*Mr. R. Ten Broeck Stout,* for the appellant.

*Mr. Aaron E. Johnston,* for the respondent.

PER CURIAM.

The decree in this case is affirmed, for the reasons stated in the opinion filed in the court of chancery by Vice-Chancellor Stevens.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—15.

*For reversal*—VROOM—1.