HANNAH LOWRY, appellant,

*v.*

PETER TIVY et al., respondents.

[Argued June 28th, 1907. Decided March 2d, 1908.]

The facts in this case fail to establish a resulting trust.

---

On appeal from a decree advised by Vice-Chancellor Stevenson.

Mr. Leon Abbett, for the appellant.

Messrs. Weller & Lichtenstein, for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

This is a creditor's bill in aid of an execution at law. The debt due the complainant was incurred, part on October 9th, 1893, and part on January 17th, 1894, by the firm of Tivy & Schmidt, which was composed of Peter Tivy and Aug. J. Schmidt. The business proved unsuccessful. Schmidt died in the fall of 1894, and on December 19th of that year Peter Tivy conveyed the real estate now in question to his sister Elizabeth Tivy. In his answer to the original bill he says that his brother Aloys Tivy was the equitable owner of the property and that the conveyance was made at the request of Aloys in payment of a debt due from Aloys to Elizabeth, and that a full consideration passed from Elizabeth to Aloys. Elizabeth in her answer says that Aloys owed her for board and said he wanted her to have what he had. Upon these averments the vice-chancellor directed that an amended bill be filed and that Aloys be brought in as a party defendant. This was done, and Aloys answered, setting up that the conveyance was in consideration of natural love and affection and a small amount of money then owing by him to Elizabeth for board.

At an examination in supplemental proceedings, Peter testified that he conveyed the property to his sister because he wanted to get rid of it. Aloys testified that he gave his sister such a big present because it was all in the family. At the hearing before the vice-chancellor he said he conveyed to his sister because he did not pay his board regularly.

Elizabeth testified that Aloys owed her one thousand dollars for board, but she kept no account, and we think the evidence makes it clear that the family lived together, each contributing to the support of the household. Aloys was the most thrifty, and in view of the uncertainty in the testimony we are not satisfied that he was indebted to his sister for board. Probably it is true,

as she says, that when he had money he would give her some, and when he had none he would give her nothing. Such testimony fails to indicate that the relation between Aloys and Elizabeth was that of debtor and creditor.

It is, of course, not of importance what the consideration for the conveyance was as between Aloys and Elizabeth, except for the light this testimony throws upon the real question in the case, which is whether Peter held the title in trust for Aloys.

To establish a resulting trust arising from the payment of the purchase-money where the title is taken in the name of another, the proof must be very clear and the fact distinctly established by satisfactory evidence. *Cutler* v. *Tuttle, 19 N. J. Eq. (4 C. E. Gr.) 549, 560.*

In the present case the testimony is far from satisfactory.

The uncertainty of Aloys' statement is well illustrated by the following testimony on his cross-examination:

"*Q.* Do you remember when these lots were conveyed to your sister by Peter Tivy in December, 1894?

"*A.* Yes.

"*Q.* Well, have you had any interest in these lots since then?

"*A.* Yes; I had some interest; that when she was in possession of that property then I have something after having paid for board.

"*Q.* I mean do you own any part of these lots?

"*A.* No; she owns the lots.

"*Q.* Do you own any part of it?

"*A.* No.

"*Q.* Who does own the lots?

"*A.* Well, he owns the lots.

"*Q.* Who?

"*A.* Peter Tivy.

"*Q.* Owns what lot?

"*A.* These lots.

"*Q.* Lots 27 and 28?

"*A.* Yes.

"*Q.* That is your brother, isn't it?

"*A.* Yes.

"*Q.* And he has owned them right along, hasn't he, these lots?

"*A.* Owned these lots?

"*Q.* Who owns lots 27 and 28 in block 48 that we have been talking about?

"*A.* I own them because I paid for them.

"*Q.* You still claim to own them, do you?

"*A.* Yes.

"*Q.* How about your sister, does she own them?

"*A*. Yes.
"*Q*. You can't both own them?
"*A*. No.
"*Q*. Who does own them?
"*A*. How is that now?
"*Q*. Do you own them or does she own them, or does you brother Peter own them?
"*A*. She owns them now."

The uncertainty is increased by Aloys' account of the payment made by him to Pape, the original vendor who conveyed to Peter September 30th, 1890. He says he paid Pape with certificates issued by the town of Union and the city of Hoboken, to the firm of Beyer & Tivy, of which he was a member. Many of these certificates were produced; only three of them had Pape's name upon them. Aloys says he paid no money and received no money from Pape, and that they did not count interest on the certificates. The town of Union certificates were all dated prior to 1889, except the three endorsed by Pape. One of these was assigned to him June 4th, 1889, another June 13th, 1889, and another is dated on June 13th, 1889, but the assignment is not dated. These three certificates aggregate $1,141.58. The consideration of the deed from Pape is $1,900, and the correctness of this amount is not questioned. Aloys' attention was called to the fact that the certificates were transferred more than a year before the deed and to the discrepancy between the amount of the certificate and the consideration of the deed, but he failed to explain the apparent inconsistency. He at first said he paid some other certificates of the city of Hoboken, and immediately added, "I don't know, I have no idea, I don't know; I must have paid it, I cannot recollect." The difficulty is not diminished by the fact that Beyer had on the face of things a half interest in the certificates.

We think, upon the whole case, that Aloys has failed to establish the resulting trust, and to overcome the presumption which arises from the fact that the title was in Peter from September 30th, 1890, to December 19th, 1894. The complainant's debt was incurred during this time. As to her the conveyance to Elizabeth was fraudulent. The decree should be reversed and the record remitted to the court of chancery in order that a decree may be made in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, DILL—11.