Mr. and Mrs. Nelson, the adverse litigants in this cause, were married on December 16th, 1915. Discord which may be regarded as unfortunate caused them to separate on September 14th, 1944. I borrow the following characterizations of the parties from the lively briefs of counsel. Mr. Nelson is said to be "one habitually suspicious and alert," "he lacks nothing in the way of ability to guard and protect his own interests." His own counsel envision him "as a character at once open, candid, confiding and affectionate." Mrs. Nelson is portrayed as "highly critical, if not contemptuous, of her husband and his ability, and always she suspects the world at large to be attempting to cheat her and hers." Her counsel picture her as a "trusting, guileless soul." To me, both Mr. and Mrs. Nelson appeared to be refined persons, perhaps highly sensitive and impressionable.
The present suit implicates the ownership of six tracts of land situate in the Township of Hopewell, Mercer County. New Jersey, and the propriety of certain withdrawals made by Mr. Nelson in 1944 from a bank account in the Hopewell National Bank.
The transcript of the testimony adduced at the final hearing is voluminous, and the factual story underlying the issues in controversy cannot here be conveniently related in detail and at such consequential length.
Mr. Nelson is evidently an astute, judicious, and experienced business man who for many years has been a contractor engaged in the construction of railroads. Circumspection, foresight, and perspicacity are manifestly his natural or cultivated qualities. Although he, like many sagacious executives, has conducted his operations in a corporate disguise, yet he safeguarded his chartered control of the corporations against any possible rebellious acts of his co-directors by *Page 331 
exacting from them letters of resignation effective at his will. This innate characteristic of his and the accordant policy accumulate influential significance in the consideration of his state of mind in the transactions to which this cause of action relates.
Long ago he ingratiated the hope that sometime he might acquire a country estate near Princeton, New Jersey. In 1927 or 1928 there came to his notice a farm property situate in the Township of Hopewell, Mercer County. The buildings including the residence were old and in disrepair. To Mrs. Nelson the property was unattractive in appearance, and she regarded her husband's project with disfavor. Mr. Nelson, however, envisaged the feasible adaptation of the farm to his aspirations. He purchased the farm in March, 1928, and thereafter in 1930, 1932, 1938, 1943, and 1944, he acquired five additional tracts of land in the vicinity.
I am persuaded that Mr. Nelson paid the purchase prices of all of the six tracts of land either with his own funds or with the funds of H.W. Nelson Co., Inc. Initially the titles were taken either in the name of Henry W. Nelson or H.W. Nelson Co., or in the name of Mrs. Nelson. Eventually the record titles of all were placed in the name of Mrs. Nelson.
At a considerable cost the homestead was remodeled and enlarged and the property in general was refreshed. Although primarily organized as a residential and recreational country estate, Mr. Nelson has so supervised its management as to make it productive of some income.
Mrs. Nelson declares that the conveyances to her as grantee with the consent and at the direction of her husband constitute a gift or settlement. Such is the presumption, but it is not conclusive in effectiveness. It may be demolished by definite, trustworthy, and convincing proof of a contrary intention.Strong v. Strong, 134 N.J. Eq. 513; 36 Atl. Rep. 2d410, and authorities therein cited; affirmed, 136 N.J. Eq. 103; 40 Atl. Rep. 2d 548.
There is an indubitable circumstance pervading all of those transactions which seems to me to be insurmountable in determining the true contemporaneous intentions of the parties. That circumstance is that upon lodging ostensibly the *Page 332 
titles to the several tracts in his wife, Mr. Nelson comformably with what seems to have been an inveterate course of conduct, caused her to sign, duly acknowledge, and deliver to him a printed form of deed incomplete in its composition, to the end that he might if he so desired "fill in" the instrument to accommodate his own purposes. The validity, if any, of such "blank deeds" is not the point of their significance. Evidently both Mr. and Mrs. Nelson supposed the deeds executed and acknowledged by her to be serviceable and efficacious if occasion recommended their use. His request for such deeds and her voluntary execution of them for his purposes give utterance to the genuine intention of Mr. Nelson.
Intention, as I recognize it, is a mental application of one's thoughts toward some object to be attained in a certain manner. Transfers accompanied by such a preconceived and deliberate privilege of disendowment as in the present case are assuredly destitute of the essential elements of an intention to make an absolute gift and settlement.
A pre-eminently similar line of action was pursued in the maintenance of the local bank account. Motivated by considerations of convenience, Mr. Nelson established the account at the Hopewell National Bank at Hopewell in the name of Mrs. Nelson. He in reality furnished the credits, superintended the use of the account and, again in conformity with his routine, he kept at hand in his New York office a constant supply of blank checks on the Hopewell bank signed by Mrs. Nelson. This demonstrative evidence has constrained me to agree with counsel for the complainant that Mr. Nelson's "business life has trained him to a point where he lacks nothing in the way of ability to guard and protect his own interests." His manifest endeavors "to guard and protect his own interests" in the transactions subjudice dissipate the idea that he intended benevolently to bestow upon his wife the irrevocable and consummate ownership of the real estate and bank account.
More reconcilable with his course of conduct is the conviction that he supposed that he was in effect creating revocable trusts. His consultations with his attorney Mr. Homan relative to the eventual preparation of a formal trust indenture *Page 333 
seem also to strengthen that conception of his acts. However inartistic and legally impotent his chosen methods may have been, his personal supposition of their effect is indicative of his intent.
In 1944 the affectionate bonds of marital unanimity between Mr. and Mrs. Nelson seemed to crumble more rapidly, for reasons which I am not called upon to identify. It is said that Mr. Nelson's accountants at that time invited his attention to the fact that several thousands of dollars of the H.W. Nelson Company had been disbursed for the acquisition and development of the so-called Mount Rose estate at Hopewell and that the company had received no compensatory reward or quid pro quo. Mr. Nelson was informed that consequently his own liability for additional income tax assessments was trembling on the verge of exaction by the Internal Revenue Department. He states that he was exhorted to immediately convey the Hopewell Township real estate to the company. Whether at the advent of that exigency he feared a likely major liability to the federal taxing authorities or more seriously contemplated an expeditious separation from his wife would, if acutely determinative, propound a very perplexing question. Whatever may have been the impelling cause and the predominant motive, it is evident that Mr. Nelson again acted resolutely "to guard and protect his own interests."
He prepared a deed to be executed by Mrs. Nelson and himself conveying the six tracts of real estate at Hopewell to H.W. Nelson Co., Inc. In a brief and majestic conversation with Mrs. Nelson on August 4th, 1944, he probably emphasized and perhaps exaggerated the income tax emergency. But, despite the hasty, intrusive, and inauspicious features of the occurrence, Mrs. Nelson nevertheless joined him in the execution and acknowledgment of the deed. His request and her compliance on that occasion were not novel experiences for either of them. Mrs. Nelson had not theretofore hesitated to sign the so-called "blank deeds."
Moreover, in this particular it was relevant and significant to learn at the final hearing that Mrs. Nelson had possessed and sold real estate of her own and that for a period of time *Page 334 
she had served in the capacity of a broker in negotiating sales of real estate and, indeed, had in that pursuit excelled her associates and merited a prize from a realty company for her efficiency and accomplishments.
A panoramic, yet discriminative view of all of the evidence guides me to the conclusion that in consequence of the acquaintance of Mrs. Nelson with real estate conveyances, she was fully aware of the character and purport of the instrument she signed and acknowledged on August 4th, 1944, and that cognizant of what she too supposed to be merely her trusteeship of the Hopewell property, she executed the deed to her husband's company at the request of her husband in substantially the same spirit and understanding in which she had theretofore signed and acknowledged her execution of the incomplete deeds.
It is therefore my judgment that Mr. Nelson in reposing the apparent legal title of the real estate and bank account in his wife, never in fact intended thereby to accomplish and effectuate an absolute and unqualified gift to his wife, nor am I able to congregate from all the circumstances any adequate factual justification for the nullification of the deed of August 4th, 1944.
The factual ingredients of a cause are sometimes suggestive of equities other than those invoked. There was some intimation that the H.W. Nelson Co., Inc., is a mere receptacle of the possessions of Mr. Nelson. Whether in such a situation the execution of the deed of August 4th, 1944, by Mrs. Nelson operated in equity to extinguish her inchoate right of dower in the real estate therein described is a question which has not been projected by the pleadings in the present cause, nor debated by counsel, nor presented for determination.
Confining myself to the decision of the controversial issues formulated in the present cause, I have resolved to advise a decree dismissing the bill. *Page 335