38 N.J. Super. 535 (1956)
120 A.2d 52
ELEANOR TURRO, INDIVIDUALLY, AND GERARD ALBERT TURRO, AN INFANT, BY HIS GUARDIAN AD LITEM, ELEANOR TURRO, PLAINTIFFS-RESPONDENTS,
v.
CHARLES TURRO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1955.
Decided January 6, 1956.
*538 Before Judges CLAPP, GOLDMANN and FRANCIS.
Mr. Joseph M. Rotolo argued the cause for plaintiffs-respondents (Messrs. Rotolo & Rotolo, attorneys).
Mr. Martin J. Kole argued the cause for defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action was brought to quiet title to certain property on which a one-family house is situated. The infant plaintiff is the posthumous child and sole heir of his intestate father, and he bases his claim on a deed to the property made allegedly to his father as grantee. However, his father's father, the defendant, admittedly paid the purchase price therefor to the grantor named in the deed; and in a counterclaim the grandfather asserts that the father took title subject to a purchase money resulting trust in the grandfather's favor. To the counterclaim the infant answers *539 saying that his grandfather, when he paid the money, intended to make a gift of it to his father. Thus the principal issue is presented: was a gift intended?
There is another issue in the case, to wit, that raised by defendant's contention that the grantee named in this deed was himself, not his son. In fact, both he and his son used the same name at times. However, whether we look at the matter from the angle of the grantor, or that of the defendant or his son, we have no hesitancy in holding that the son, who had admittedly signed the contract of sale, was the grantee. We therefore need not even consider the effect of the rule forbidding a party to argue, on appeal, for two facts diametrically opposed to each other (at this juncture of the argument defendant contends he is the grantee; on the question of a resulting trust, he claims his son is such). Jersey City v. Hague, 18 N.J. 584, 603-605 (1955).
We are concerned then with only the issue first stated: did defendant make a gift of the purchase money to his son? The mere fact that he paid the same gives rise to what may be "accurately" described as a "presumption" that he intended the grantee to take title to the property in trust for the defendant. This is a presumption against the gift. However the further fact that the grantee was defendant's son gives rise to a conflicting "presumption" that defendant intended a gift. Weisberg v. Koprowski, 17 N.J. 362, 371-374 (1955).
We find ourselves confronted here with two questions: first, does the latter presumption supersede the former one; and second, if so, what quantum of evidence is needed to rebut it?
Where a presumption is not heavily fortified by policy or probability  viz., the ordinary presumption  it disappears as a factor in the case as soon as sufficient evidence is adduced as to the presumed fact as would enable a reasonable man to make a finding contrary to that fact. New Jersey in this respect follows the rule stated by Thayer and espoused in the Model Code of Evidence (Rule 704); it differs from that appearing in the Uniform Rules of Evidence *540 (Rule 14). Further, see In re Weeks' Estate, 29 N.J. Super. 533 (App. Div. 1954); Silver Lining v. Shein, 37 N.J. Super. 206 (App. Div. 1955). In the case of a conflict between two ordinary presumptions, if the facts giving rise to one of them will, under the rule stated, be sufficient to destroy the other, then both presumptions can logically be disregarded, and the issue will turn simply on the facts themselves, freed of the presumptions. Further, see Thayer, Preliminary Treatise on Evidence 346 (1898); 9 Wigmore, Evidence (3d ed.), § 2493; Rule 704, comment b, Model Code of Evidence; Levin, Pennsylvania and the Uniform Rules of Evidence: Presumptions and Dead Man Statutes, 103 U. Pa. L. Rev. 1, 21 (1954). However, in this case the mere fact that defendant paid the purchase money, though it raises a presumption of a resulting trust, of course does not indicate an intention not to make a gift of the money. So, to resolve the conflicting presumptions here, we must look to other principles.
It may be (we need not decide the point), that any two conflicting presumptions of equal weight will always neutralize each other. Rule 15, Uniform Rules of Evidence. But however that may be, nevertheless where one of two conflicting presumptions rests on substantially stronger considerations of policy or probability, it displaces the weaker one and stands alone in the action. Vreeland v. Vreeland, 78 N.J. Eq. 256, 262 (E. & A. 1911), and a line of cases stemming therefrom, six of which are cited in Annotation, 14 A.L.R.2d 7, 42 (1950); see Kushinsky v. Samuelson, 142 N.J. Eq. 729, 731 (E. & A. 1948). In accord, see Morgan, Some Observations Concerning Presumptions, 44 Harv. L. Rev. 906, 932 (1931); 1 Morgan, Basic Problems of Evidence 36 (1954); and Rule 15, Uniform Rules of Evidence. The law works out a technique here in order to give effect to dominant considerations.
As will appear from the New Jersey cases, the conflicting presumptions presented here are not of equal weight. The presumption of a resulting trust favoring the person who pays the purchase money is outweighed by the *541 presumption of gift favoring the grantee. The apparent philosophic tendency of our cases is not to look with favor upon a resulting trust, since the trust always arises dehors the words of the deed and in fact at variance with them.
The comparative weakness of the former presumption (the presumption of a resulting trust) is perhaps indicated by the law's reluctance to allow it to be created. It is held that to raise the presumption the proofs must be very clear. Cutler v. Tuttle, 19 N.J. Eq. 549, 560 (E. & A. 1868); Midmer v. Midmer's Executors, 26 N.J. Eq. 299 (Ch. 1875); Parker v. Snyder, 31 N.J. Eq. 164, 169 (Ch. 1879), affirmed 32 N.J. Eq. 827 (E. & A. 1880); Lowry v. Tivy, 73 N.J. Eq. 387, 389 (E. & A. 1908). In accord, see Restatement of Trusts, § 458; 4 Powell, Real Property 553 (1954). But see Professor Scott's criticism, 3 Scott, Trusts, § 458 (1939). We are not called upon to pass on the point here, except to take note of the tendency of the cases (already adverted to) not to look with favor upon the creation of a resulting trust. The passage quoted in Strong v. Strong, 136 N.J. Eq. 103, 105 (E. & A. 1945), and Bacon v. Bacon, 6 N.J. 117, 125 (1951), which seems to require proof beyond a reasonable doubt in order to rebut this presumption of a resulting trust, may be questioned.
On the other hand, there is ample indication in our law as to the strength of the above-mentioned presumption of gift, particularly in the situation presented here (see the cases to be cited presently) where the payor of the purchase price is the father of the grantee. Moreover it may be taken from the New Jersey decisions that this presumption (even where the payor of the purchase price is the son of the grantee) supersedes the presumption of a resulting trust in case of a conflict between them and that it thereupon stands alone in the action. Weisberg v. Koprowski, 17 N.J. 362, 372 (1955). This resolves the first of the two questions above stated.
We thus are brought to the second question, namely, what quantum of evidence is needed to rebut the presumption of a gift. There is a mass of cases in this State holding *542 that where the payor of the purchase price is the father or husband of the grantee, this presumption controls unless the proofs offered in rebuttal leave no reasonable doubt that the person paying the purchase money intended not to make a gift. We cite only those cases that have been before the highest court of the state. Read v. Huff, 40 N.J. Eq. 229, 234 (E. & A. 1885); Duvale v. Duvale, 56 N.J. Eq. 375, 382 (E. & A. 1898) (evidence must be "clear"); Lipp v. Fielder, 72 N.J. Eq. 439, 443 (E. & A. 1907); Beck v. Beck, 78 N.J. Eq. 544, 548 (E. & A. 1911); McGee v. McGee, 81 N.J. Eq. 190, 194 (E. & A. 1913); Hood v. Hood, 83 N.J. Eq. 695, 698 (E. & A. 1914); Prisco v. Prisco, 90 N.J. Eq. 289, 290 (E. & A. 1919); Gorrell v. Gorrell, 97 N.J. Eq. 367, 369 (E. & A. 1925); Mullen v. Mullins, 130 A. 628, 629 (E. & A. 1925); Rosecrans v. Rosecrans, 99 N.J. Eq. 176, 178 (Ch. 1926), affirmed 109 N.J. Eq. 137 (E. & A. 1931); Chard v. Chard, 104 N.J. Eq. 443, 444 (E. & A. 1929); Bertolino v. Damario, 107 N.J. Eq. 201 (E. & A. 1930); Reeves v. Weber, 111 N.J. Eq. 454, 455 (Ch. 1932) (certain, definite, reliable and convincing proof), affirmed at page 457, and 567 respectively (E. & A. 1932); Bankers Trust Co. v. Bank of Rockville, etc., 114 N.J. Eq. 391, 399 (E. & A. 1933); Strong v. Strong, 136 N.J. Eq. 103, 104 (E. & A. 1945); Nelson v. Nelson, 139 N.J. Eq. 329, 331 (Ch. 1947) (definite, trustworthy and convincing), affirmed 141 N.J. Eq. 360 (E. & A. 1948); Bacon v. Bacon, 6 N.J. 117, 125 (1951). It will be found that most of the 17 cases cited refer to the rule as "well settled." As to attempts to shape the law so as to allow only three degrees of proof, namely, first, probability (i.e., a preponderance of the evidence), second, a high probability (i.e., clear and convincing evidence) and, third, proof beyond a reasonable doubt, see McBaine, Burden of Proof: Degrees of Belief, 32 Calif. L. Rev. 242 (1944); Morgan, Instructing the Jury upon Presumptions and Burden of Proof, 47 Harv. L. Rev. 59, 66, 67 (1933); 5 New Jersey Practice 116 (1950); but see Model Code of Evidence, Rule 703, comment.
*543 Defendant, taking cognizance of some of the 17 cases, claims that the Supreme Court in Weisberg v. Koprowski, 17 N.J. 362, 371-376 (1955), overruled the above proposition for which they all are cited  and without even stating the proposition. In the first place it is to be observed that the court did not have before it a situation like that under consideration. Here (as stated) the payor of the purchase price is the parent, and the grantee is the son; there the payor was the son, and the grantee a parent. It is more likely that a son would be a natural object of a parent's bounty, than that a parent (though dependent on a son) would be the object of a very substantial gift outright from the son. Hence the law might require a stronger measure of proof to rebut the presumption of a gift in the former case. However, suffice it here to say that the question as to the weight of the evidence was not passed upon in Weisberg v. Koprowski.
Defendant, in support of his contention, cites Professor Scott's criticism of the above-stated New Jersey rule (which is perhaps the majority rule):
"It is true that the rules adopted by the courts with respect to the various relationships do not necessarily determine the final result, since they lay down presumptions which may be rebutted by further evidence. The presumptions, however, are given undue weight. Indeed, in some decisions it has been stated that they can be rebutted only by very strong, clear or even conclusive or indubitable evidence. Such a rule clearly gives too great weight to the relationship between the parties. The question is really one of intention as shown by all the circumstances. The notion that intention can be determined by the application of hard and fast rules of law is common in primitive systems of law, but it tends to disappear as courts and lawyers become more sophisticated." 2 Scott, supra 2259; further, see 2262, 2263, 2304.
In accord, see 4 Pomeroy's Equity Jurisprudence (5th ed.), § 1041, p. 86; Hartley v. Hartley, 279 Ill. 593, 117 N.E. 69, 73 (Sup. Ct. 1917); Scanlon v. Scanlon, 6 Ill.2d 224, 127 N.E.2d 435, 438, 439 (Sup. Ct. 1955) (but cf. Houdek v. Ehrenberger, 397 Ill. 62, 72 N.E.2d 837, 839 (Sup. Ct. 1947), and cases cited); Epstein v. Ratkosky, 283 Pa. 168, *544 129 A. 53 (Sup. Ct. 1925). Apropos of this criticism, it may be noticed that the Model Code of Evidence, Rule 704, seems to flatten all presumptions (except the presumption of legitimacy, Rule 703), bringing them down to the level of the ordinary presumption, so that they all disappear from the case upon the introduction of evidence sufficient to enable a reasonable man to make a finding contrary to the presumed fact. To the contrary, see Rules 14-16 of the Uniform Rules of Evidence.
Some may feel that Professor Scott's views on the point are open to question. But quite apart from that, we do not conceive it to be the proper function of this court to consider overruling a proposition so obviously approved by the highest court of the State. Predham v. Holfester, 32 N.J. Super. 419, 428 (App. Div. 1954).
Besides, it is unnecessary in this case to determine what quantum of proof is needed to rebut the presumption of gift here. For even if we accept arguendo defendant's contention that undue weight is given to such a presumption by the New Jersey cases, and if we should say further that the evidence adduced here has removed that presumption from the case, nevertheless defendant must carry (as he admits) the burden of proof on the issue. He must establish by a preponderance of the evidence that there is (as asserted in his counterclaim) a resulting trust with the beneficial ownership resting in himself and that there was no intention to vest such ownership in the grantee. Scott, supra, § 458; Restatement of Trusts, § 458(c). Neither the plaintiffs' answer to the counterclaim, nor the presumptions above stated shift this burden to the plaintiffs. We conclude that defendant has not carried the burden.
An examination of the proofs supports this conclusion. We look first at the evidence favoring defendant. He testified that his purpose in purchasing the house was to enable himself to make a profit on it. More significant than this, he not only paid the purchase price and negotiated the purchase, but his attorney (who doubtless represented his son in the transaction) sent him the deed after it was recorded *545 and he (the defendant) retained it. Moreover there is substantial proof indicating that the title was put in the son's name because defendant was having marital difficulties with his wife and he feared she would not join in a deed when he wanted to sell the property.
There is also substantial testimony that after the son took title to the property (and therefore secured, according to plaintiffs' theory of the case, both the beneficial and legal title thereto), he urged defendant to change the title putting it in the names of the son and his wife. Besides the son's wife testified that her husband thought it would be nice to get defendant to change the title, turning it over to herself and her husband. The trial judge, realizing the force of this testimony, made this comment:
"It might be asked if he owned the property why did he talk to his father about the change? Anyone hearing and seeing the defendant on the witness stand would realize the dependence of the son upon his father, particularly where the father had put up the money for the property."
The trial judge doubtless would explain in the same way the testimony adduced from a friend of the son. According to the friend, the son said he could not erect a patio on the house because it was his father's house and he would need his father's permission. Perhaps a similar explanation is to be made of the proof that the son suggested to defendant that the latter buy the adjoining property and thus increase the value of the premises in question if defendant ever decided to sell them.
Defendant relies on further proofs. There was proof as to defendant's payment of taxes and maintenance expenses for the first two years after title closed and as to the son's payment for the next three years, which testimony need not be spread out here. Furthermore, it appears that the son allegedly said on one occasion when he and his wife were living apart that he was glad defendant had not turned the property over to himself and his wife; but this is perhaps offset by further testimony that the son added at *546 the time "I would never have got the property had both names been put on the deed."
It will be observed that a considerable part of the testimony relied upon by the defendant consists of statements allegedly made by a deceased person, the son. Cf. N.J.S. 2A:81-2; Shotwell v. Stickle, 83 N.J. Eq. 188 (Ch. 1914); Gretkowski v. Wojciechowski, 26 N.J. Super. 245, 248 (App. Div. 1953). Oral utterances of persons deceased at the time of the trial must be sifted with extraordinary vigilance before credit may be given to them. Lang v. Hexter, 137 N.J. Eq. 100 (Ch. 1945), affirmed 138 N.J. Eq. 478 (E. & A. 1946).
The proofs adduced by plaintiffs are at least as persuasive as those adduced by defendant, if not more so. However, in one respect plaintiffs also rely on a statement of the deceased; the son's widow testified that when he was contemplating their marriage he intended to buy "by himself" the property in question until his father had volunteered to buy it for the son and his prospective bride as a wedding gift. Some days after the son signed the contract and before the closing, the defendant at a party  while speaking to his son's prospective father-in-law and asking, on behalf of the son, for the girl's hand  said he was going to give his son and the girl a house as a wedding present. This is corroborated by defendant's estranged wife.
More significant is the affidavit filed by the defendant in a matrimonial action instituted by his wife, in which he swore that he purchased the house "for our son," that he "did this principally to gratify my wife's wishes." This constitutes an admission of a party. Cf. Yetman v. Hedgeman, 82 N.J. Eq. 221, 223 (Ch. 1913); Weisberg v. Koprowski, 17 N.J. 362, 374 (1955). His affidavit was submitted in answer to his wife's affidavit in the same cause, in which she had said defendant bought the house as a wedding present for their son.
Furthermore, the attorney for the grantor at the time of the closing, a member of the bar of this State for over 40 years, and a disinterested witness, testified that there *547 was conversation at the closing (attended, he testified, by defendant, his son and his attorney) from which he "got the impression" that the purchase of the house "was in the nature of a wedding present" for the son. The trial court said it was "impressed" with this testimony, apparently not only accepting it as reliable but also rejecting the contrary testimony of defendant's attorney and defendant. Due regard must be had for the opportunity of the trial court to judge of the credibility of the witnesses. R.R. 1:5-3(a). The fact that the wedding did not take place until a year after the closing is, we conclude, not a controlling matter.
Further analysis of the proofs is not called for. Defendant certainly did not rebut the presumption of a gift by establishing beyond a reasonable doubt that there was no gift. Indeed, assuming that the presumption of gift is eliminated as a factor in the case, it still clearly appears that defendant has not made out by a preponderance of the proofs that no gift was intended.
Affirmed.