ANTONIO GEROSO et al.

*v.*

ALFRED DeMAIO et ux.

[Submitted February 20th, 1909. Decided March 9th, 1909.]

1. Evidence *held* to show that a conveyance was made in fraud of the creditors of the grantor, precluding the grantor from obtaining a decree setting it aside on the ground that it was voluntary.

2. A conveyance fraudulent as to the creditors of the grantor is good as between the parties.

Bill to set aside conveyance of real estate. Heard on bill, answer, replication and proofs.

The bill seeks to set aside a conveyance of certain real estate made by complainants to defendant, February 6th, 1897. The bill asserts that on the date named complainant Antonio Geroso was the owner of the property in question and was being pressed by his creditors for the payment of his debts and applied to defendant Alfred DeMaio for help; that complainants were inexperienced in business and unable to speak the English language with fluency, and that defendant Alfred DeMaio was a person of business experience and a master of the English language, and a person to whom ignorant Italians were accustomed to apply for assistance and advice; that defendant Alfred DeMaio then assured complainants that he could and would adjust and settle their business troubles, and then and there requested complainants to convey the premises in question to defendant Philomena DeMaio, wife of defendant Alfred DeMaio; that complainants made the conveyance as requested and have received no consideration whatever for the conveyance; that defendants have since executed a mortgage on the premises so conveyed to secure the payment of a debt owing by complainant Antonio Geroso, and now refuse to reconvey the premises to said complainant and claim to own the same.

The answer admits that at the time the conveyance was made complainant Antonio Geroso was being pressed by his creditors; but alleges that defendant Philomena DeMaio purchased the premises in question, and paid to complainant Antonio Geroso in cash the amount agreed upon as the consideration for an absolute conveyance to her.

*Mr. John W. Wescott,* for the complainants.

*Mr. John Boyd Avis,* for the defendants.

LEAMING, V. C.

The testimony of the several witnesses cannot be reconciled. Complainants testify that the conveyance which they now seek to avoid was made without consideration, and though made at a time of financial embarrassment, was, in fact, made in reliance upon the promise of defendants to "fix up" the claims of creditors, and not with an intent to defraud creditors. While defendants' answer admits that complainant Antonio Geroso applied to defendants at the time the conveyance was made for advice and help touching the claims of creditors, defendants testify that they purchased the property outright and paid for it in full in cash and knew nothing about any claims of creditors. A careful consideration of the evidence leads me to the firm conviction that neither complainants nor defendants have testified to the entire truth. The evidence forces me to the conclusion that the property in question was conveyed by complainants to defendants without consideration and for the sole purpose of placing the property beyond the reach of the creditors of its owner. I am unable to adopt the view, which is urged, that complainants did not fully appreciate what they were doing, or that they were under the controlling influence of defendants. Although complainant Antonio Geroso speaks the English language with difficulty, he is far from being an ignorant man. When called upon to examine various letters and other documents written in Italian, I observed that he read them with entire ease and with speed, and throughout the trial he manifested a keen appreciation of the force of the various features of the case. Letters written by

him 'were offered in evidence in which he offered to sell the prop-
erty in question to defendant Philomena DeMaio at the price
which defendants say was paid. These letters, he now explains,
were written by him at the time of the transfer and antedated at
the request of defendants to make people believe that defendants
wanted to buy. After the transfer he told a justice of the peace
that he had sold his farm for cash. This he explains as a "joke."
Following the transfer he left his farm and went to New York to
live. This he explains by stating that defendant Alfred DeMaio
told him that it was necessary to enable DeMaio to "fix up" his
matters. Subsequently, a bill was filed by his creditors to set
aside the conveyance on the ground of fraud, and he made an
affidavit for use in the defence of that suit in which he testifies
that the sale was absolute and that he had been paid the full con-
sideration in cash. This affidavit he explains by the statement
that the affidavit was not read to him and that he did not know
its contents. That statement I do not believe. These and other
circumstances of the case render it impossible for me to believe
that the conveyance was made by complainants without an ade-
quate knowledge of its effect or without a defined purpose on their
part to defraud the creditors then pressing for their money—one
of whom was already prosecuting an action at law at the time the
conveyance in question was made. As already stated, after the
conveyance was made, creditors of complainant Antonio Geroso
filed a bill to set aside the conveyance as fraudulent. Defendants
herein, after preparing for the defence of that suit, conceded its
force by paying a part of the claim and executing a mortgage
on the premises now in question to secure the payment of the
balance. In that manner the creditors of complainant Antonio
Geroso are now paid or secured. As to the testimony of defend-
ants to the effect that defendant Philomena DeMaio purchased
the property or paid for it, I think it sufficient here for me to
simply say that I do not believe it. The letters, the telegrams,
the rent receipts, the conferences and other surrounding circum-
stances, and the unsatisfactory character of the testimony given
by defendants impel me to that conclusion. I think that a con-
sideration of all of the circumstances of the case properly leads to
the conclusion that what actually transpired was as follows: The

conveyance in question was made without consideration and for the purpose of defeating the enforcement of the claims of the creditors who were then pressing for their money. In order to give the conveyance the aspect of an absolute sale and to enable the fraudulent grantee to successfully resist any attacks of creditors of the grantor, correspondence, receipts and other papers were manufactured and the grantor left the premises and moved to New York. The real agreement was that the grantee would take title and stand off the creditors and would subsequently reconvey the property, and for that service he was to receive $20, for which amount a note was at that time given. After suit was brought by the creditors to set aside the conveyance, defendants herein became fearful of the insufficiency of their defence and made settlement with the creditors in the manner already stated. It was not until then that defendants, realizing the force of the various evidences of absolute sale in their possession, determined to keep the property and to resist the demand of complainants to it.

It is manifest that under these facts this court cannot grant relief to complainant, notwithstanding the fact that the effect of the decree will be, in effect, to enable defendants to steal complainants' property. The courts of this state have repeatedly and uniformly held that considerations of public policy as well as the express provisions of the statute of frauds forbid relief against a transaction of this nature. In *Marlatt* v. *Warwick, 19 N. J. Eq. (4 C. E. Gr.) 439, 454,* Justice Depue forcefully states the law and the reasons supporting it as follows:

"* * * Sound policy requires a rigid adherence to the rule of law, that a conveyance, fraudulent as to creditors, is good as between the parties. Nor should the courts be induced to refuse to give full effect to these well-settled principles of law because of any supposed injustice in permitting a party to retain the benefit of an illegal transaction to the prejudice of his confederate. In *Baldwin* v. *Campfield,* Chancellor Williamson says: 'We must not be misled by any supposed hardships of the case. The conduct of the son-in-law (the defendant) in this transaction, must justly excite our indignation. Our sympathies are naturally with the old man whom he may have deceived

and wronged, and yet we may not violate a single principle upon which law and equity are administered, to punish the one or vindicate the other.' In *Den* v. *Shotwell, 23 N. J. Law (3 Zab.) 474,* Chief-Justice Green says: 'In dealing with illegal contracts, courts do not and cannot look to the interests of those who are parties to the illegal transaction. The law regards the welfare of society as paramount, and in enforcing the law, courts cannot impair its efficiency or cripple its operation by considerations affecting the interests of those who are *particeps criminis. Salus populi suprema lex.*' In the same case in this court (*Den* v. *Shotwell, 24 N. J. Law (4 Zab.) 791*), Justice Ogden, in delivering the opinion of the court, says: 'Courts will not aid a person, whose cause of action, either upon his own showing, or otherwise, appears to arise *ex turpi causa,* or from the transgression of positive law. We do not adopt this policy for the purpose of protecting a defendant, but from the determination not to assist such a plaintiff.' 'It is not for the defendant's sake,' says Lord Mansfield, 'that the objection is ever allowed, but it is founded on general principles of policy, which the defendant has the advantage of, contrary to the real justice between him and the plaintiff, by accident, if I may say so.' *Holman* v. *Johnson, 1 Cowp. 343.* The objection is rather that of the public, speaking through the courts, than of the defendant as a party to the contracts. The law disallows all proceedings in respect of illegal contracts, not from any consideration of the relative position and rights of the parties, but upon grounds of public policy. *Fry Spec. Perf. 309.* 'The old cases,' says Mr. Justice Story, 'often gave relief both at law and in equity, where the party would otherwise derive an advantage from his iniquity. But the modern doctrine has adopted a more severely just, and probably politic and moral rule, which is to leave the parties where it finds them, giving no relief and no countenance to claims of this sort.' *1 Story Eq. Jur. § 298 note 2.* It was said by the counsel of the complainant that this objection not having been set up in the answer, cannot now be taken. The nature of the transaction did not appear on the face of the bill, and the defendants in their answer deny entirely the making of any agreement with the complainant for the redemption of the

property by him. But it is not necessary that the objection should have been taken in the answer, to enable the court, as the representative of the public, to refuse to grant relief upon an illegal contract. So strict are the courts in adhering to the principle of not aiding in the enforcement of an illegal agreement that if the agreement as stated in the pleading does not appear to be illegal, but circumstances come out in the evidence that show that it is in fact tainted with illegality, the court will, on its own motion, direct an inquiry into the matter. *Parken* v. *Whitby, 1 Turn. & R. 366; Evans* v. *Richardson, 3 Mer. 469.*"

The quotation above given is from a dissenting opinion, but that part quoted is in entire harmony with the majority opinion, as well as with numerous other decisions of this state both before and since. See, also, *Ruckman* v. *Ruckman, 32 N. J. Eq. (5 Stew.) 259, 260; Schenck* v. *Hart, 32 N. J. Eq. (5 Stew.) 774, 781.*

As I am satisfied that complainant Philomena Geroso was not ignorant of the purpose of the conveyance, I am obliged to advise a decree dismissing the bill as to both complainants.