The bill in this case is filed, first, to establish a resulting trust in real estate situate at Red Bank, New Jersey, which was conveyed to the defendant Clifford H. Brower by W. Harold Powers and Frank E. Price, by deed dated February 3d 1920, and recorded in the Monmouth county clerk's office in book 1119 of deeds, pages 464, c., on the ground that the purchase price of this property was paid to the grantors in said deed by Trevone H. Brower, the father of the grantee in said deed, and the defendant in this suit. Trevone H. Brower has since died.
The bill also asks that a lien in favor of complainant be established against the said property for moneys alleged to have been advanced by the complainant to Trevone H. Brower on account of the purchase price of said property; also that an accounting be had of amounts paid by the complainant for the account of the estate of Trevone H. Brower since his death and for the payment of debts of that estate; that the respective rights of the parties to this suit in said real estate be established, and that an alleged agreement between the complainant and defendant, whereby it is alleged the defendant agreed to turn over to the complainant one-half of all the estate of Trevone H. Brower, including a one-half interest in the above-mentioned real estate, in consideration of the complainant's conducting the business of "Brower Sisters," to be hereafter referred to, pending the settlement of the estate, be specifically performed.
The testimony shows that prior to 1916, and during the lifetime of the defendant's mother, who was the first wife of Trevone H. Brower, defendant's father and mother conducted a fruit canning business at Red Bank, under the name of "Brower Sisters." The defendant's mother died, apparently, some time early in 1916 or late in 1915; the date has not been definitely established. *Page 220 
In 1916, Trevone H. Brower, who was then conducting the canning business under the name of Brower Sisters, entered into an agreement to purchase the property described in the above-recited deed, from the then owner, for $7,000, which sum was to be paid by the assumption of a $5,000 mortgage then on the property, by the purchaser, the payment of $200 in cash at the time the contract was entered into, $300 the first of the following January, and $500 on January 1st for the next three succeeding years, at which time title was to be delivered, according to the terms of the agreement.
In July, 1917, Trevone H. Brower married the complainant, and thereafter the complainant and her husband conducted the canning business which had theretofore been conducted by Trevone H. Brower, under the name of Brower Sisters. The bank account was maintained in one of the Red Bank banks in the name of Brower Sisters, both parties evidently having the right to draw on these funds, although no canceled checks are produced showing that the complainant ever signed any checks for the so-called firm. The testimony given by her to this effect, however, is not denied. This business was continued under the name of Brower Sisters down to the death of Trevone H. Brower, on September 10th, 1923.
After the contract of sale above mentioned was entered into, and before the marriage of complainant to Trevone H. Brower, Mr. Brower entered into possession of the property which was the subject of the above-recited deed, and carried on the business conducted under the name of Brower Sisters there, and continued this down to the time of his death.
The deed in consummation of the contract of sale of this property was executed by the vendors in February, 1920, and the deed was made in favor of Clifford H. Brower, the defendant. Although settlement was supposed to have been had on this transaction in February, it does not appear from the testimony who had the deed for the premises until in August, 1920, at which time a building and loan mortgage was executed by the defendant in the sum of $5,000 in substitution for, and out of the proceeds of which, the $5,000 *Page 221 
mortgage referred to in the agreement of sale was paid. After the execution of the building and loan mortgage the deed for the property in question, according to the testimony of the defendant, was delivered to him, either by the attorney in whose office the mortgage was executed, or by his father. The defendant does not seem to be entirely clear on this point. He says that immediately after he received the deed he put it in his safe deposit box in the bank, and that it has been there ever since until this controversy arose.
On the other hand, the complainant testifies that Trevone H. Brower had this deed in his possession up until the time of his death, and that she gave the deed to the defendant after Trevone H. Brower died.
It appears from the testimony, and, in fact, is admitted by all parties, that at the time of the conveyance of the property in question to Clifford H. Brower, the defendant, his father had a number of judgments in the supreme court standing against him, these judgments representing a considerable amount of indebtedness incurred in a former business in which he had failed. It is claimed by the complainant that the title to the property in question was vested in the defendant for the purpose of defeating the lien of these judgments. The defendant testifies that he has no knowledge with respect to this alleged fact whatever, but claims that his father told him before the conveyance was made that he intended to buy the property for him, and that he afterwards told him, on at least two occasions, that he had bought the property for him, and that he intended that it should be his. It appears, however, that the first knowledge that the defendant had that the property stood in his name was in August, 1920, at the time the building and loan association mortgage was executed.
The complainant also alleges that after the death of her husband, and pursuant to an agreement entered into between her and the defendant, she paid out large sums in settlement of debts of her husband's estate, and that this was with the understanding that she was to receive one-half of all the assets of the estate, together with a one-half interest in the *Page 222 
real estate, and that otherwise she would not have paid these debts.
It further appears from the testimony that the only bank account which Trevone H. Brower had in his lifetime, or at least after the marriage of the complainant, was the Brower Sisters' account. Unquestionably, from the testimony the complainant spent a large part, if not all, of her time in the plant of Brower Sisters, helping with the work there. The claim is, on the one hand, that she did this as part owner, and on the other hand that it was simply in the performance of her wifely duties, and that the gain from the business was the gain of the husband, in which the wife had no share, except the usual share of a wife. In this connection there was offered in evidence at the trial a form of general release, executed by Trevone H. Brower and Mabel Brower, at Red Bank, New Jersey, and following their names "Brower Sisters," being inserted in the release. This release was signed by Mr. and Mrs. Brower, and acknowledged before a notary public. This was offered to show that the firm known as Brower Sisters was composed of Trevone H. Brower and Mabel Brower.
The defendant, in connection with the statement by the complainant that she delivered the deed for the property which is above mentioned to him after his father's death, claims that in this she is mistaken, that what she did deliver to him after his father's death was a deed from Mary E. Hopping and husband to W. Harold Powers and Frank E. Price, dated December 1st, 1913, and recorded in book 966 of deeds for Monmouth county at page 85. This deed was offered in evidence and marked Exhibit D-1.
Defendant claims that this is the deed, and the only deed which he received from the complainant.
My understanding of the law in this state with respect to establishing resulting trusts, where property is conveyed to a child, to be paid for by the parent, is that the presumption is that such a conveyance is considered as an advancement, and that that presumption can be rebutted only by the clearest and most positive proof, that it was not so intended. *Page 223 
My mind is also perfectly clear on another proposition of law which may have its application to this case, and that is that where a conveyance is made to a person other than the one who pays for the property, at the direction of the purchaser and for the purpose of defrauding his creditors, no resulting trust arises, and in such a case equity will leave the parties exactly where it finds them, as a result of their wrongdoing.
From this it may be deduced that unless the complainant can establish that it was her money, at least in part, which was applied to the purchase of the property in question, and that she had no part in this attempt to defraud her husband's creditors, the court will be obliged to hold that irrespective of whether this conveyance was an advancement by the father to the son, the father, or any representative, or anyone claiming under him, would now be barred from establishing a resulting trust in that property.
* * * * * * *
Since delivering the foregoing, counsel for the respective parties have submitted briefs which I have examined with care, but the conclusion at which I arrived at the hearing and which I then expressed to counsel is not at all changed.
The evidence in this case is overwhelming, and conclusive to the effect that the conveyance of the land here involved was made to the defendant for the purpose of defrauding the creditors of Trevone H. Brower, and this with the knowledge and approval of the complainant. She participated in the attempted fraud and cannot now be relieved from it. Besson v. Eveland, 26 N.J. Eq. 469; Geroso v. DeMaio, 75 N.J. Eq. 410; Gould v. Hurley,75 N.J. Eq. 512.
With respect to the real estate here involved, the complainant does not come into equity with clean hands, and the bill, so far as it claims a resulting trust in the land mentioned, or any lien thereon or interest therein on behalf of the complainant, will be dismissed.
The testimony with respect to the oral agreement for an equal division of the property of the estate (including the real estate the subject of this suit) in consideration of the *Page 224 
payment of debts of the estate by complainant, is not at all satisfying, and a decree for specific performance will be denied.
However, I am satisfied that the complainant and her husband, Trevone H. Brower, were joint owners of the business of the "Brower Sisters," whether as partners or otherwise is immaterial to this decision; also that subsequent to Trevone H. Brower's death the complainant paid some of the decedent's debts out of her personal funds; that the estate was indebted to her in some sum for moneys advanced to her husband during his lifetime and that the defendant collected some of the assets of his father's estate for which he has not accounted. I will, therefore, refer this matter to a master to state on account — first, of the assets of the estate of Trevone H. Brower at the date of his death; second, of the amount of the debts of the decedent's estate paid by complainant out of her personal funds; third, of the amount owing to the complainant for loans or advancements made by complainant to her husband before his death and not repaid, and fourth, of the amount of assets of the estate coming into the hands of both complainant and defendant, and not accounted for, stated separately as to each. The complainant is entitled to be repaid out of the assets of the estate which came into defendants' possession for all moneys advanced by her for the estate, assuming, of course, that the estate is solvent, which I understand it is.
I will advise a decree in accordance with the foregoing conclusions. *Page 225