MARY G. BACON, INDIVIDUALLY AND TRADING AS BACON & GRAHAM, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. JACOB D. BACON, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued November 27, 1950—Decided January 2, 1951.

118 

*Mr. Joseph M. Jacobs* argued the cause for plaintiff-appellant and cross-respondent. *Mr. David Stoffer* on the brief. (*Messrs. Stoffer & Jacobs,* attorneys.)

*Mr. Jack Rinzler* argued the cause for defendant-respondent and cross-appellant. (*Messrs. Feder & Rinzler,* attorneys.)

The opinion of the court was delivered by

CASE, J. The litigation is between wife and husband. It concerns a paper and twine business conducted under the name of Bacon & Graham, and, on the counterclaim, title to real estate.

The wife, Mary G. Bacon, filed a complaint in the former Court of Chancery alleging that she was the owner of the business and that her husband, Jacob D. Bacon, the defendant, was employed by her as a salesman and was seeking to seize the business as his own. The complaint prayed for restraint. The husband answered denying the wife's allegations. By way of counterclaim he asserted that he was an equal partner in the business and asked a dissolution of the partnership and an accounting; and as a further cause of action he alleged that a house, title to which was taken in the name of the wife, had been purchased with funds supplied by him under an agreement that he was to receive a one-half interest as tenant by the entirety, and he sought a judgment decreeing that the wife held title to one-half of the entire premises in trust for him and that she be directed to convey the same to the two of them as tenants by the entirety.

The case was referred to then Vice-Chancellor Lewis who had taken several days' testimony on final hearing when the change in the court system was effected and he was retired. Thereafter, at the request of the parties, the matter was referred to him as special master so that he might conclude the hearings. In due course he filed a report, which concluded that Bacon & Graham was a partnership business owned equally by Jacob D. Bacon and Mary G. Bacon, his wife,

that the plaintiff should account for the defendant's interest in the partnership and for the profits and losses up to and including the date of the report, and that the real estate standing in the name of Mary G. Bacon should be transferred to Mary G. Bacon and Jacob D. Bacon as tenants by the entirety. Objections were filed and were argued before Judge Grimshaw whose findings, reported in 8 *N. J. Super.* 418, agreed with the conclusion of the master that there was a partnership and that there should be an accounting but decided that the partnership terminated on March 5, 1946, and that the accounting should be as of that time, and, further, that the money with which the real estate was purchased came from the account of Bacon & Graham and that as the account was the joint property of the parties the husband had contributed one-half of the purchase price, but because the title was taken in the name of the wife there was a presumption of gift without convincing proof of a contrary intent and that transfer of title should not be ordered.

On appeal from the judgment entered thereon the Appellate Division, by an opinion of Judge Colie, reported in 7 *N. J. Super.* 182, affirmed the finding that a partnership had existed and was dissolved on March 5, 1946, and that plaintiff should account to defendant for half of the net worth of the partnership and make the monetary adjustments enumerated in the judgment below. It also determined that the real estate was purchased with money from the account of the partnership, that the wife as a partner held title in trust for the co-partners, and, there being no evidence of a contrary intent, that the property was, consequently, an asset of the partnership and not the sole property of Mary G. Bacon.

Both parties petitioned this court for certification and each petition was granted. The matter is, therefore, now before us on appeal from the judgment of the Appellate Division.

The finding of facts in the Chancery Division was as follows:

"Jacob D. Bacon and the plaintiff were married in 1929. They have one child, a son. Bacon has had a varied business career. Mary

Bacon, prior to her marriage had served in various clerical capacities. At the time of the marriage Bacon was operating a large storage garage in the City of Paterson. · He continued in this business until 1938, when the depression proved too much for the garage business and it was lost by foreclosure. Mrs. Bacon, who had ceased work upon her marriage, went to live with her parents, Bacon to live with his sister. In 1939 Bacon started the paper and twine business in a · small way. Progress was slow. Husband and wife conferred on ways to increase their income so that they might.again have a home of their own. Mary Bacon suggested that she should borrow money on a diamond ring which defendant had given her. Together they determined to borrow money from relatives and place the combined sum in the business, as capital. Accordingly, Mrs. Bacon borrowed $220 on the security of the ring. An additional $200 they obtained in the form of a loan from Mrs. Bacon's brother, a lawyer. Bacon, at the time, had two judgments against him and the brother, as a condition to the making of the loan, insisted that it should be made to appear that the business belonged to Mrs. Bacon until the loan was repaid. Bacon demurred. He was not being pressed. He intended to pay the claims against him at the earliest possible moment and he saw no need for the subterfuge. He was overruled and a certificate of trade name was filed setting forth that Mary ·G. Bacon was trading as Bacon & Graham. An account in that name was opened. Mary Bacon executed a power of attorney to her husband. It was not used, however. A signature card requiring the signatures of Mary G. Bacon and Jacob D. Bacon was filed at practically the same time. The $220 received on the ring and the $200 loan obtained from Mrs. Bacon's brother, as well as a small additional sum from Bacon were deposited in the account. On paper the enterprise appeared to be the sole venture of Mrs. Bacon. Actually, however, it was a partnership. Checks were signed by both partners. Loans required for the business were obtained upon the joint credit of both Bacon and his wife. Business premises were rented in both names. No salaries were taken by either of them. Such drawings from the business as were made were for their joint benefit. The insurance remained in the name of Mary G. Bacon, trading as Bacon & Graham. And the income tax returns prepared by another brother of Mrs. Bacon were not partnership returns. But I am firmly of the opinion that the business was a partnership and was so regarded by the parties. And they·would still be operating the business as a joint venture had it not been for the break in their relationship.

"What was the real cause for the break, I do not know. Ostensibly it was the disagreement between Mr. and Mrs. Bacon over the method of disposing of the last claim against Bacon. The business had prospered. The original loans had been repaid and the bank account had grown. By 1945 Bacon had only one claim left and he wanted to pay it. Mrs. Bacon apparently felt that the payment of the claim would be a waste of money. She wanted Bacon to go through bankruptcy. To his credit, he refused to do so. Mary Bacon refused to

sign a check in payment of the loan and Bacon was compelled to borrow money. In retaliation he withheld customers' checks from the firm bank account.· This litigation followed. On behalf of Mrs. Bacon it is argued that the original scheme was devised for the purpose of defrauding Bacon's creditors and that equity should not relieve him from the consequences of his fraud. The argument is specious and completely lacking in substance. The idea was not Bacon's. It was adopted in spite of his disapproval. And none of his creditors was harmed or deceived for that matter, so far as the record shows."

That finding is substantially correct, and we adopt it, as did the Appellate Division. Plaintiff disputes the accuracy of so much of it as states that Mrs. Bacon's brother who made the small loan insisted as a condition of the loan that the business be made to appear as belonging to Mrs. Bacon. That criticism is technically justified, although the brother did testify that his loan was with the understanding that the business was to belong to Mrs. Bacon. The suggestion about the trade name and the carrying of the bank account in the name of Bacon & Graham with Mrs. Bacon named as the sole owner was made and pressed by another brother of the plaintiff, a practicing attorney. But that variation is not material.

The points made on behalf of the wife are, first, that the courts below erred in ruling that a partnership was established, second, that they erred in failing to determine that the defendant acted in fraud of creditors and was estopped to allege a partnership interest, third, that the Appellate Division erred in ruling that the home, purchased in plaintiff's name, was partnership property, and, fourth, that the Appellate Division erred in failing to rule that a husband cannot reach real property put in the name of his wife for the purpose of securing it against his judgment creditors.

The dispute about the ownership of the business is one of fact. The proofs are in irreconcilable conflict. No advantage will flow from a rehearsal of the minutiæ of assertion and contradiction. In our opinion the husband had no design to, and did not, evade his creditors. The husband and wife were upon hard times and by combining their small resources and their several capacities developed a prosperous business to which the husband contributed by his efficient sales efforts and

advertising ability and the wife contributed by her better financial sagacity. It was the wife's purpose, in which the husband never joined, that the husband's creditors should be evaded and that the money which proceeded from the new venture should not be used in payment of them. The final cleavage between wife and husband followed the insistence by the latter upon paying, and the actual payment of, his one remaining debt.

■ It needs no citation of law to sustain the conclusion that on the facts an equal partnership was established. That was the report of the special master and the decision of the Chancery Division and of the Appellate Division; and it is our decision, too.

Permeating the wife's entire argument is the assumption and contention that the husband was motivated by the purpose of defrauding his creditors, that the primary events having to do with the formation and conduct of the business were so inspired and that the placing of the real estate title in the wife's name was an incident in the same fraudulent scheme. As to the house this argument is developed in the wife's second and fourth points, *supra,* but is made without any supporting testimony by her. The effort is to build it up from two incidents in the husband's case, one in the pleadings and the other in the proofs. Defendant's counterclaim alleged that the premises were purchased with money taken from the paper and twine business of the defendant and his wife. It also alleged that the two had mutually agreed to purchase the home but that at complainant's suggestion title to the premises was to be taken in the complainant's name alone until an outstanding judgment creditor's claim was paid or discharged; and on cross-examination the defendant was led to reaffirm that position.

■ We find, factually, that the incident of acquiring the home involved no fraudulent purpose on the part of Bacon to deceive his creditors or to escape the payment of his debts; and the wife nowhere in her testimony relating to that transaction accuses him of fraud or charges a fraudulent act against him. Interpreting the allegations in the light of the

testimony at the trial, we conclude that the counterclaim was intended to charge, and did in effect charge, that the agreement was to take the title in both names but that at the wife's suggestion the title was temporarily taken in her name and that the wife's reason for that suggestion was to keep it free of entanglement because of an outstanding judgment against the husband. The husband's testimony was that "the title was to be in both names" and that before title passed the wife suggested "I will take it in my name, and later on I will transfer it to your name, later on I will put the property in your name;" that on the way to the lawyer's office "to close the deal * * * I gave the checks, I handed over the checks for the house, I said, 'Put the deed in both names.' She said, 'I will do that.'" Nevertheless she took the title in her own name solely. Mrs. Bacon's answer-to-counterclaim specifically denies that she and her husband made a contract of the sort charged and her only testimony relating to that phase of the transaction, so far as we have discovered, is that she did not make an arrangement with her husband to reconvey the property to him, that the money with which the property was purchased was her money and that the house was therefore her house. We do not find a denial by her of the husband's testimony that she promised to have the deed from the seller "put in both names." Unquestionably the money was taken from the partnership funds of Bacon & Graham. The Chancery Division found that as a fact but decided that a recovery by the husband was prevented by the presumption of gift. The Appellate Division also found that as a fact but reversed the legal conclusion of the lower court upon the theory of a trusteeship in partnership funds. If we go back to the report of the special master, we find no suggestion there that an agreement in avoidance of creditors was involved. We ought not, in order to accomplish a reversal, revert to a controversial allegation in the counterclaim upon which plaintiff's denial has been uniformly accepted and which was disregarded as an issue in the establishment of the facts at the trial.

 We are satisfied from the proofs that the transactions and conversations between husband and wife were substantially

as related by the husband, but that nevertheless the wife, for reasons of her own, excluded her husband from the title. With the testimony standing thus and with the purchase money coming, not from the husband's separate funds, but from the funds of the partnership composed of the two parties to this transaction, we think that there is enough in the case to take it out of the application of the presumption of gift from husband to wife.

The principle under which a conveyance to a wife, the consideration for which was paid by the husband, is sometimes presumed to be a gift was stated by the Court of Errors and Appeals in *Strong v. Strong,* 136 *N. J. Eq.* 103 (1944), to be as follows:

"Where one purchases property and pays the consideration therefor, and the conveyance of the legal title is taken in the name of a stranger, a trust will be presumed to have arisen in virtue of the transaction in favor of the person who has paid the consideration. This principle results from the equitable theory that the consideration draws to it the beneficial ownership. Where, however, the conveyance is not made to a stranger, but is made to a person whom the purchaser is under a legal obligation to maintain, such as a wife or child of the person who pays the price, the good consideration of blood or love and affection will support the conveyance, and no resulting trust will arise from the payment of the consideration. In such cases the presumption is that a settlement or advancement was intended. See 3 *Pom. Eq. Jur.,* §§ 981, 1039. But these presumptions may be overcome by evidence disclosing a contrary intention. Repeated adjudications in this state have defined the principles already stated and have also defined the proofs necessary to overthrow a presumed or resulting trust or to rebut the presumption of a gift or settlement in the case of a child or wife. The proofs, except as to acts or declarations of the party to be charged, must be of facts antecedent to or contemporaneous with the purchase, or so immediately afterwards as to form a part of the *res gestæ.* The proofs must also be convincing and leave no reasonable doubt as to the intention of the party."

Thus the rule which favors the wife or other person in a relationship of dependency is an exception to the general rule that where one person purchases property and pays the purchase price and title is taken in the name of another a resulting trust is presumed in favor of the one who pays; but the presumption may be overcome by evidence disclosing a contrary intention, and that occurs in this case.

The property purchased was for the joint use of those who composed the partnership whence came the funds. The relation here was not exclusively the usual matrimonial relationship. The wife, by her contention, was not a dependent but on the contrary was the dominant and supporting member of the household. It was she who, according to her version, was affording a livelihood to her husband; it was her business, her money, her home; her husband had nothing, no wherewithal to make her a gift. Her attitude and blunt testimony are sufficient to negative a presumption that she was a dependent and that the husband, recognizing her dependency, was, out of his bounty, making a settlement in her interest. An equitable principle should not be invoked to defeat equity. The proofs are persuasive of a persistent effort by the wife to divest her husband of his rightful share in their joint enterprise. The contention upon which the wife rested her sole title to the property, namely, that the money was hers alone because the business from which it came was hers alone, is completely shattered by the finding that the business was not hers alone but belonged to her and her husband as partners. The events are all of a pattern. The purchase of the home was not an isolated circumstance. It falls into the procession and takes character from the company in which it moves.

We accept the proofs, not as establishing a precise agreement, but as rebutting a presumption of gift.

Whatever the contradictions and uncertainties in the proofs, this much is certain: The two started with practically nothing and worked together to build up a profitable business with substantial accumulated funds; from the undivided profits of the business a property was purchased for their joint use; the husband, to his wife's disgust, paid his debts; and from this it comes that the wife has the business, the assets thereof and the home purchased therefrom, and the husband is stripped of everything except the memory of difficult days.

The money for the purchase did not pass from the partnership to Mrs. Bacon and from her to the seller. The checks went physically through her hands but they were drawn by

the partnership, upon partnership funds, direct to the seller. Therefore, both upon the general principle of a resulting trust and upon the law more specifically applicable to a partnership, the real estate became, equitably, partnership property; and, since the partnership is now dissolved, and the assets are being distributed, the wife, who holds as trustee for the partnership, should put the title in the names of the partners, meaning herself and her husband, as tenants in common. *Cf. Johnson v. Dougherty,* 18 *N. J. Eq.* 406, 409 *(Ch.* 1867); *Cutler v. Tuttle,* 19 *N. J. Eq.* 549, 558 *(E. & A.* 1868); *Partridge v. Wells,* 30 *N. J. Eq.* 176 *(Ch.* 1878); affirmed, 31 *Id.* 362 *(E. & A.* 1879); *Silverstein v. Wolf,* 151 *A.* 482 (not officially reported; *E. & A.* 1930); *Uniform Partnership Law, R. S.* 42:1–8; *Deveney v. Mahoney,* 23 *N. J. Eq.* 247 *(Ch.* 1872); *Yetman v. Hedgeman,* 82 *N. J. Eq.* 221 *(Ch.* 1913); *Eberhard v. Eberhard,* 4 *N. J.* 535, 552 *(Sup. Ct.* 1950); *Haimerl v. Haimerl,* 142 *N. J. Eq.* 740 *(E. & A.* 1948). That relief comes within the general prayer of the counterclaim.

The points made by the wife on her appeal are not sustained and the judgment below should be affirmed.

The husband appeals from the judgment in the Appellate Division and specifies as error matters relating to the extent and limitations of the accounting. It is enough to say that we consider that the partnership was rightly held to have terminated on March 5, 1946, that the good will, under the proofs, was properly omitted from appraisal and that the items of account are soundly sustained by the testimony. The judgment below will be affirmed in the respects appealed from by the husband as well as in those appealed from by the wife. Neither side has completely prevailed and no costs are allowed.

*For affirmance*—Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—5.

*For reversal*—Chief Justice VANDERBILT, and Justice HEHER—2.