SAMUEL J. GRAHAM, JR., MARIE GRAHAM KOETZ AND HELEN GRAHAM McATEER, PLAINTIFFS-APPELLANTS, v. GRACE ONDERDONK, DEFENDANT-RESPONDENT.

Argued September 27, 1960—Decided October 24, 1960.

358

*Mr. Ernest Prupis* argued the cause for the plaintiffs-appellants (*Messrs. Weltchek & Weltchek,* attorneys).

*Mr. Daniel G. Kasen* argued the cause for the defendant-respondent (*Messrs. Kasen, Schnitzer & Kasen,* attorneys).

The opinion of the court was delivered by

BURLING, J. Appellants, judgment creditors of C. Herbert Onderdonk, brought suit against Grace Onderdonk, the respondent in this appeal. The purpose of the litigation was to set aside a deed from C. Herbert Onderdonk, husband of the respondent, to Grace Onderdonk, which deed was dated November 16, 1956 and recorded December 17, 1956. The transfer, which concerned property located in the Borough of Bernardsville, Somerset County, New Jersey, allegedly had been made in fraud of creditors.

The suit was transferred from the Superior Court, Law Division, on the respondent's motion to the Superior Court, Chancery Division, and there consolidated with other actions against respondent and her husband seeking, *inter alia,* the same relief as appellants. At the conclusion of the trial, the trial judge held that there was a fair consideration for the transfer as defined in *R. S.* 25:2–9, and that therefore the transfer was not in fraud of creditors under *R. S.* 25:2–10 even though, according to the trial court's findings, C. Herbert Onderdonk held an interest in the property as a tenant by the entirety prior to the transfer. Appellants and their co-plaintiffs in the consolidated trial below appealed the judgment to the Superior Court, Appellate Division. That court affirmed the judgment below but not for the same reasons given by the trial court, holding instead that C. Herbert Onderdonk held an interest in the property in question only as a trustee by virtue of a resulting trust in

favor of his wife, with the consequence that the November 1956 deed could not be a transfer in fraud of creditors. Appellants alone sought certification, which we granted. 32 *N. J.* 351 (1960).

■ In our view of the case, it is only necessary to consider whether the husband held a beneficial interest in the property in question. Respondent argues that full equitable title to the property was at all times vested in her. Owing to the disagreement of the courts below on that question we will proceed to make new findings of fact. *R. R.* 1:5–4(*b*) provides:

"(*b*) on a review of any cause, criminal or civil, involving issues of fact not determined by the verdict of a jury, new or amended findings of fact may be made, but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

It was the practice of an appellate court reviewing a chancery decree to make an independent investigation of the facts. *Naame v. Doughty,* 109 *N. J. Eq.* 535 (*E. & A.* 1932); *Cartan v. Phelps,* 91 *N. J. Eq.* 312 (*E. & A.* 1920); *Glenn v. Glenn,* 142 *N. J. Eq.* 625 (*E. & A.* 1948). See *Russo v. Governor of the State of New Jersey,* 22 *N. J.* 156, 169 (1956); *Toolan, Appellate Practice,* in *The New Practice,* 330, 336 (*Schnitzer ed.* 1949). This power was given under the new court system in effect since 1948 to all reviewing courts in matters arising from a non-jury trial court determination. See *Rule* 1:2–20(*a*), repealed September 9, 1953; *R. R.* 1:5–3(*a*), effective September 9, 1953, repealed September 8, 1954; *R. R.* 1:5–4(*b*) effective September 8, 1954; *Kidde Mfg. Co. v. Town of Bloomfield,* 20 *N. J.* 52, 66 (1955); *Pratico v. Rhodes,* 17 *N. J.* 328, 335 (1955); *State v. H. L.,* 61 *N. J. Super.* 432, 437 (*App. Div.* 1960). The disparate conclusions reached by the courts below on what we consider to be the decisive question in the case makes this appeal a fitting situation for the operation of *R. R.* 1:5–4(*b*).

When Grace Onderdonk married C. Herbert Onderdonk in February of 1936, she was financially independent, having inherited upon the death of her first husband in 1934 an estate of about $120,000. Consequently in 1938 she was able to contribute $20,000 to become a partner in a brokerage firm together with her husband and another person. She also loaned to her husband his monetary contribution to the partnership, a sum of $15,000. Ultimately, he paid $1,000 of this loan to respondent, and the remainder of the debt became the basis of a promissory note made by C. Herbert Onderdonk in favor of respondent. When this note became overdue, respondent obtained a renewal note from her husband. Thus the record suggests that respondent sought to maintain her separate estate and that she conducted her transactions with her husband according to business standards.

In 1948, respondent and her husband became interested in a single family dwelling in Bernardsville, New Jersey. They determined to purchase it, and secured the seller's approval to a price of $28,000. A mortgage application was made in the name of C. Herbert Onderdonk, although it appears that reports of the financial position of both respondent and her husband were offered in support of the mortgage application. The application was granted, and the proceeds of a mortgage loan were used to pay $15,000 of the purchase price. Respondent supplied the remainder of $13,000. She used money from her separate estate for that purpose.

The deed for the Bernardsville property was prepared in the name of C. Herbert Onderdonk and Grace Onderdonk as tenants by the entirety. Respondent testified that the deed was prepared in this manner and not in favor of herself alone because of the advice of the real estate agent connected with the transaction. This man, respondent said, stated that the mortgagee required title to be taken in the name of both husband and wife whenever both were living and not divorced. The real estate agent, who nego-

tiated the mortgage loan for respondent and her husband, corroborated respondent in this respect.

After settlement, respondent, her husband, and their two children took possession of the Bernardsville house and made it their family home. There they lived uninterruptedly until October 1956. In the meantime, the husband bore the financial burden of maintaining the house, paying heat, electric, gas, and other utility bills. He paid for the maintenance and repair of the property and provided the money for daily family needs. He also paid the interest on the mortgage and on account of the principal. Respondent testified that during this period she occasionally asked her husband to have the property put in her name. He never refused to do this, respondent said, but he never got around to doing it. Respondent persisted in her requests because, she testified, she was fearful that on her husband's death the property would be given to her husband's children by another marriage.

On the morning of October 10, 1956, C. Herbert Onderdonk removed permanently from the Bernardsville home. That day respondent heard from a friend that the morning newspaper carried an article to the effect that her husband's brokerage business had been suspended by the Securities and Exchange Commission. A few days later she learned that her husband had been arrested. He subsequently pleaded guilty to forgery and grand larceny and was sentenced to Sing Sing Prison in New York for ten years. Respondent's husband, it seems, had been appropriating property of his clients for his own purposes. Among his victims were appellants, beneficiaries of a trust, the *corpus* of which was in the control of respondent's husband. Respondent testified, and her claim remained uncontradicted in the record, that she knew nothing of her husband's business malpractice. But, apparently motivated by the obvious urgency of the situation disclosed to her by radio and newspaper, she sought legal advice soon after her husband's departure from the family home. Among the subjects discussed with

her attorney was the matter of correcting the record title to the Bernardsville property which respondent claimed as being solely hers. Her attorney accordingly made preparations to clear her title, which culminated in the deed of November 16, 1956, by which C. Herbert Onderdonk conveyed his interest as tenant by the entirety in the Bernardsville property to his co-tenant, the respondent.

Respondent testified that she always considered the property in question to be hers alone. She stated that the apparent interest created in her husband by the deed of 1948 was made at the suggestion of the real estate agent who believed it to be necessary to obtain a mortgage. In addition to the real estate agent, respondent's husband also corroborated her in this detail. The husband stated that he always considered that the home belonged to his wife. He testified that he paid the interest and on account of the principal on the mortgage, the utility and repair bills, and similar items in discharge of his obligation to support his family; if he did not maintain the home, he said, he would only be required to pay rent. It is also worthy to note in further corroboration of respondent's position that the November 1956 deed was executed, delivered, and recorded without having federal revenue stamps attached.

█ It is in this factual setting that we approach the decision to be made in this case. In light of these facts, we hold that there existed from the time of the 1948 deed to the Onderdonks as tenants by the entirety a resulting trust in favor of respondent affecting the interest held nominally by her husband.

█ There is substantial authority to support the proposition that when a wife pays the entire consideration for the transfer of property to herself and her husband as tenants by the entirety, a presumption arises that the wife intended a gift to the husband. *Jones v. Wright,* 323 *S. W. 2d* 932 (*Ark. Sup. Ct.* 1959); *Walker v. Walker,* 369 *Ill.* 627, 17 *N. E. 2d* 567 (*Sup. Ct.* 1938), *certiorari* denied 306 *U. S.* 657, 59 *S. Ct.* 774, 83 *L. Ed.* 1054 (1939); *Anderson*

*v. Anderson,* 215 *Md.* 483, 138 *A.* 2*d* 880 (*Ct. App.* 1958); 4 *Powell, Real Property* § 592, *p.* 561 (1954). On the other hand, there is also considerable authority that a resulting trust is to be presumed in such a situation. *Schwarz v. United States,* 191 *F.* 2*d* 618, 621 (4 *Cir.* 1951); see, *Greenly v. Greenly,* 29 *Del. Ch.* 297, 49 *A.* 2*d* 126, 129 (*Ch.* 1946); *Nussbacher v. Manderfeld,* 64 *Wyo.* 55, 186 *P.* 2*d* 548, 553–554 (*Sup. Ct.* 1947); *Kane v. Johnson,* 397 *Ill.* 112, 73 *N. E.* 2*d* 321, 324 (*Sup. Ct.* 1947); 5 *Thompson, Real Property* § 2343, *p.* 96 (*repl.* 1957). The purpose of a resulting trust is to effectuate the inferred intent of the parties. 4 *Pomeroy, Equity Jurisprudence* § 1031, *p.* 61 (*5th ed.* 1941); 4 *Powell, Real Property* § 592, *p.* 552 (1954); 4 *Scott, Trusts* 3013 (2*d ed.* 1956). Thus where the intent appears from the circumstances, it is unnecessary to give effect to a presumption of intent. *Legendre v. South Carolina Tax Commission,* 215 *S. C.* 514, 56 *S. E.* 2*d* 336 (*Sup. Ct.* 1949); *Ferguson v. Stokes,* 269 *S. W.* 2*d* 655 (*Mo. Sup. Ct.* 1954); *Brod v. Brod,* 390 *Ill.* 312, 61 *N. E.* 2*d* 675 (*Sup. Ct.* 1945). In considering another case similar to this, *Rayher v. Rayher,* 14 *N. J.* 174, 43 *A. L. R.* 2*d* 909 (1953), this court noted that the authorities indicated three different views: the first, maintained by Professor Bogert (2*A Bogert, Trust & Trustees* § 460) is that the wife intends a gift to her husband when she has property purchased by her transferred to her and her husband jointly; the second, supported by the *Restatement* (*Restatement, Trusts* § 441, *comment* (*e*)), is that the wife is presumed to intend a gift in such a situation, provided there is not evidence of a different intent on her part; the third view, advanced in *Schwarz v. United States,* 191 *F.* 2*d* 618, 621 (4 *Cir.* 1951), is that a resulting trust in favor of the wife is presumed in such a situation. This court said:

"In view of the factual situation in this case, however, it is unnecessary for us to take a stand as between the views set forth by Bogert and in *Schwarz v. United States, supra,* for in our view

of the case the facts fall within the exception mentioned in the *Restatement* and clearly establish a trust in favor of the plaintiff * * *." 14 *N. J.*, at *p.* 182.

Likewise, it is unnecessary for us to adopt a present position as between these views because the evidence in the instant case is clear and convincing that C. Herbert Onderdonk held his interest as a tenant by the entirety in the Bernardsville property as a trustee by virtue of a resulting trust in favor of respondent.

It was the uncontradicted testimony of the real estate agent who negotiated the sale of the property in question to the Onderdonks that Onderdonk's name was put in the deed not in order that he might gain a beneficial interest in the property, but only in order to satisfy what was thought to be a requirement of the mortgagee. The evidence is clear that respondent provided the down payment of $13,000 with which the house was purchased. None of her husband's funds was used nor was there any indication of a loan or agreement that he would reimburse her. Both respondent and her husband testified that the property was always considered as belonging to respondent. In the circumstances we find their testimony to be creditable.

■ Respondent's position as beneficial owner of the entire property is not vitiated to any degree by the circumstance that her husband bore the burden of the payments of the interest and on account of the principal on the mortgage from the time of purchase until he ceased residing with respondent in 1956. From that point forward, respondent made those payments. Under the facts of the case at hand, we conclude that respondent's husband intended the payments he made of the interest and on account of the principal on the mortgage, though made directly to the mortgagee, to have been in partial discharge of his obligation to provide housing for his family, despite that incidentally they inured to his wife's benefit. Any such benefit caused by the husband's making these payments would be presumed to be a gift to the wife, see *Strong v. Strong*, 134 *N. J. Eq.* 513 (*Ch.* 1944),

affirmed 136 *N. J. Eq.* 103 (*E. & A.* 1945). *Cf. Polombo v. Polombo,* 48 *N. J. Super.* 13, 15–16 (*Ch. Div.* 1957), and such payments gave him no right in the property. See *Restatement, Trusts 2d* § 456 *comment f* (1959).

 We conclude, therefore, that C. Herbert Onderdonk's only interest as a tenant by the entirety in the property in question was as a trustee of the legal title under a resulting trust for respondent's benefit. Consequently, appellants cannot levy upon this interest to satisfy their judgment. *Bunn v. Mitchell,* 27 *N. J. Eq.* 54 (*Ch.* 1876); *Kelly Springfield Tire Co. v. Lester,* 190 *N. C.* 411, 130 *S. E.* 45, 47 (*Sup. Ct.* 1925). Nor can they levy upon the husband's inchoate right of curtesy, *Bucci v. Popovich,* 93 *N. J. Eq.* 121 (*Ch.* 1921), affirmed 93 *N. J. Eq.* 511 (*E. & A.* 1922); *Corradini v. V. & M. Holding Corp.,* 34 *N. J. Super.* 427 (*Ch. Div.* 1955). In any event, it is admitted that respondent and her husband have been divorced since the trial of this cause, and thus any inchoate right of curtesy became non-existent.

Accordingly, the judgment of the Superior Court, Appellate Division, is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.