167 N.J. Super. 497 (1979)
401 A.2d 271
IN THE MATTER OF THE ESTATE OF ANNA RAUCH, DECEASED.
Superior Court of New Jersey, Appellate Division.
Submitted April 2, 1979.
Decided April 20, 1979.
*499 Before Judges PRESSLER and KING.
Mr. Daniel T. Hanley, attorney for appellant.
Mr. John J. Degnan, Attorney General of New Jersey, attorney for respondent, Division of Taxation, Transfer Inheritance Tax Bureau (Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Mark S. Rattner, Deputy Attorney General, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
This is an appeal from a determination by the Transfer Inheritance Tax Bureau, following a hearing, that certain real property, title to which was in the name of the decedent Anna Rauch, is fully subject to the transfer inheritance tax, N.J.S.A. 54:34-1 et seq. Appellant Sophie Kalivoda, decedent's sister, executrix and sole beneficiary of the estate, resisted the assessment on the ground that she had a one-half interest in the property by virtue of a resulting trust in her favor to that extent. We agree with her contention and are satisfied that the determination below rejecting her claim was based on legal error.
The relevant facts are not disputed. The property in question, consisting of a house and lot in Wallington, New Jersey, was originally owned by Joseph Rauch, Sr., father of decedent and appellant. In 1942 appellant moved into the house with her family to assist decedent with the nursing of their father, who was then ill. Joseph Rauch died testate in that year. By the terms of his will, his son Joseph Rauch, Jr., inherited the house plus one-fifth of the residuary estate consisting of personalty, and each of the daughters inherited two-fifths of the residuary estate, the two-fifths share amounting *500 in value to $2,150. The son did not desire the house which at that time was the home of his two sisters, and the three accordingly agreed that he would convey his interest to them in exchange for their payment to him of their respective cash legacies. According to the testimony of appellant and her husband, appellant was concerned about protecting her interest in the property from her husband, who then had what they described as something of a drinking problem. Their concern was that he might have an accident while intoxicated, which might subject the property to claims of his creditors. They consulted with an attorney who advised all three that the best plan would be for decedent to take title to the property in her name alone rather than having title taken in the name of both sisters. It was his further advice that appellant's interest be evidenced by her grant to decedent of a mortgage showing an underlying obligation of $2150. This advice was accepted and moneys paid and title transferred in accordance therewith. The sisters continued to reside in the house, sharing all expenses equally, until decedent's death in 1976. Appellant's husband, as it turned out, overcame his drinking problem and never did incur any debts.
The hearing examiner rejected appellant's claim of title to one-half of the property on two grounds. The first was his view that the otherwise manifest plan to create a resulting trust was defeated by reason of the fact that the mortgage was dated two days after the deed. It was his reasoning that a valid purchase money resulting trust requires payment by the alleged beneficiary prior to or simultaneously with taking of title by the trustee. He further concluded, however, that even if a resulting trust had been created by these circumstances, appellant would be barred from asserting her beneficial interest therein because the purpose of the trust was to defraud creditors. We are satisfied that he erred in respect of both of these conclusions.
It is well settled that a resulting trust will be declared in favor of the one paying the purchase price of *501 property transferred to another unless it is shown that the one paying the price did not so intend. Weisberg v. Koprowski, 17 N.J. 362, 371 (1955). This principle is equally applicable where a portion of the purchase price is paid by another. In that case the interest of the payer in the property will be proportionate to the percentage of the purchase price he has paid. See 2 Restatement, Trusts 2d, § 454 at 416 (1959). There is certainly here not the slightest suggestion that appellant's payment of one-half of the purchase price arose from any other purpose, motive or circumstance other than the securing to herself of a one-half ownership interest. Nor is there any contrary presumption arising out of the circumstances here requiring rebuttal. Compare Restatement, supra, §§ 443, 445, 446 and 447.[1] The fact that the mortgage here was executed two days after the deed in no way alters the actual and intended relationship between the sisters in respect of the property. The real consideration here, unaffected by the subsequent mechanics of its implementation, was the separate but mutually dependent promise of each of them to the brother to pay him their respective and identical cash legacies in exchange for the property. This is not a case of either subsequent payment or a mere assumption of obligation of payment. See Restatement, supra, § 457 at 423. We are accordingly satisfied that a classic resulting trust in respect of a one-half interest was here both intended and effected.
We are also satisfied that there was here no illegality of purpose such as would bar appellant from now making her claim. The general rule, as stated by the Restatement, supra, § 444 at 405, is that
Where a transfer of property is made to one person and another pays the purchase price in order to accomplish an illegal purpose, a *502 resulting trust does not arise if the policy against unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction.
This principle was applied by the New Jersey Supreme Court in Yeiser v. Rogers, 19 N.J. 284 (1955), to defeat an alleged resulting trust, the purpose of which was to place assets of the purported beneficiary thereof, a professional gambler, beyond the reach of his creditors, actual or potential. While we question neither the rationale of Yeiser nor its binding effect on this court, we nevertheless find it inapposite here. First and most obviously, it was not creditors of the beneficiary of the trust here whose rights were intended to be affected but rather only creditors of the beneficiary's spouse. He, moreover, had no direct interest in the property. It was appellant's own legacy which was the subject of the trust, and appellant was under no compulsion to share her legacy, either in its original or substituted form, with her husband or to make it available during her own lifetime to satisfy his creditors. It is evident that the legal advice on which all three relied was questionable at best. Had the deed been drawn in accordance with the actualities of the operative circumstances, the property would have been conveyed, and should have been, to the sisters as tenants in common. In that event the sole interest in the property of the husband of the married sister would have been his inchoate estate of curtesy. N.J.S.A. 3A:35-2. And it is, moreover, clear that that inchoate right, whether or not assigned, is not liable to be levied or executed upon by the husband's creditors. Corradini v. V. & M. Holding Corp., 34 N.J. Super. 427 (Ch. Div. 1955); Bucci v. Popovich, 93 N.J. Eq. 121 (Ch. 1921), aff'd o.b. 93 N.J. Eq. 511 (E. & A. 1922). And see State, Comm'r of Transportation v. Shuman, 150 N.J. Super. 9, 12-13 (App. Div. 1977). The point, therefore, is that the resulting trust technique here employed neither did nor could deprive any creditors of appellant's husband of any opportunity for satisfaction which they otherwise would have had. The fact that it was employed at all, and apparently only as the result *503 of poor legal advice, cannot itself, under these circumstances, defeat appellant's legitimate interests. We hold, therefore, that she was the equitable owner of one-half of the property from the very outset of this transaction and continued as such to the date of decedent's death.
Reversed and remanded for adjustment of the transfer and inheritance tax in accordance herewith.
NOTES
[1] The Restatement sections deal respectively with presumption of gifts, payment as a loan, payment in discharge of indebtedness and payment as gift.