204 N.J. Super. 103 (1985)
497 A.2d 922
CARL PERRY, PLAINTIFF,
v.
BOROUGH OF SWEDESBORO, DEFENDANT.
Superior Court of New Jersey, Law Division Gloucester County.
Decided June 24, 1985.
*105 Caryl M. Amana for plaintiff.
Charles Iannuzzi for defendant.
CRABTREE, J.T.C. (temporarily assigned).
Plaintiff, a former sergeant of defendant borough's police department, sues to recover compensation for overtime work performed between March 15, 1980 and July 15, 1981. Plaintiff's claim is predicated on the Federal Fair Labor Standards Act (FLSA) or, in the alternative, the New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a et seq. Plaintiff also relies upon N.J.S.A. 40A:14-133, which provides that no police officer shall be required to work more than six days in any one week.
The Borough of Swedesboro is a small municipality, comprising only one square mile in total area. It is governed by a mayor and six councilmen duly elected by the registered voters of the borough. Prior to January 1980, the borough's police *106 department consisted of five members. In April and December 1979 two police officers were suspended on criminal charges. At all times pertinent hereto the borough suffered from tight budgetary constraints arising from the perceived need to provide funds for potential reinstatement of the suspended officers with back pay as well as for legal fees and costs to be incurred both to defend the suspended officers in criminal proceedings and to represent the borough in related legal controversies. As it was apparent that adequate provision for such expenses could not be made without violating the "cap law," N.J.S.A. 40A:4-45.1 et seq., an effort was made, by way of referendum, to secure public approval of an increase in the municipal budget greater than the limit imposed by the "cap law." This effort was roundly defeated by the voters, whereupon, on or about March 15, 1980, the suspended officers, together with a third officer were laid off. At this point, and continuing until plaintiff's resignation in July 1981 (except for the period July 1980 to May 1981), the borough employed only two full-time police officers, viz. plaintiff and the chief of police, Daniel De Mora.
During the period March 15, 1980 to July 15, 1981 plaintiff was assigned to a 24-hour shift on alternate days. Each shift consisted of six hours in uniform on patrol in the municipality and 18 hours of standby. During the standby hours plaintiff, though not required to be in uniform, was obligated to remain within the geographic confines of the borough and to be available to respond immediately to calls from the police dispatcher. If plaintiff found it necessary to leave the borough during his standby time he was required to make certain that the municipality had police coverage, either by Chief De Mora or by a member of the police force of a neighboring municipality. In July 1980 defendant hired a third officer, at which point plaintiff's 24-hour shift arose every third day. This situation continued until May 1981 when the third officer's employment was terminated, whereupon plaintiff resumed his 24-hour shift every other day.
*107 The borough's salary ordinances for 1980 and 1981 made no provision for overtime compensation.
At no time during the period covered by this proceeding did the borough or any official thereof declare an emergency within the purview of N.J.S.A. 40A:14-133 and 134; nor did the borough adopt the ordinance contemplated by N.J.S.A. 40A:14-132.
Plaintiff's claim for overtime compensation is predicated on the treatment of standby time as working time. For the reasons hereinafter stated, a determination of that issue is not necessary.
The Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. (FLSA) provides, in pertinent part:
Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods and services for commerce, for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. [§ 207(a)(1)]
The United States Supreme Court in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) held the FLSA as applied to "integral governmental functions" of state and municipal governments to be an impermissible interference with those functions in contravention of both the Commerce Clause of the United States Constitution and the Tenth Amendment thereto. At the time the case sub judice was tried National League of Cities was the governing law; and, accordingly, the FLSA would not apply to the employment relationship between plaintiff and defendant municipality.
However, some months after the conclusion of the trial in this case and indeed, even after the parties' briefs were filed with the court, the United States Supreme Court decided the case of Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. ___, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), in which it held the FLSA applicable to employment with state and *108 local governments. National League of Cities was expressly overruled; but the court did not indicate whether the overruling was to be given retroactive effect.
Generally, there has been a presumption that an overruling decision is intended to receive retroactive effect, but the modern view is that unless the overruling court expressly indicates in the overruling case the extent to which the overruling decision is to be given retroactive effect, lower courts are entitled to reach their own conclusions as to the issue of retroactivity. Ruhm v. Turner, 357 F. Supp. 324 (W.D.Okla. 1973); Annotation, "Prospective or Retroactive Operation of Overruling Decision," 10 A.L.R.3d § 1371 (1966). Thus, whether Garcia is to be given retroactive effect in the case sub judice is for this court to decide, after examining the relevant criteria for retroactive applications set forth in decisions of the United States Supreme Court and of the New Jersey Supreme Court.
To begin with, the Constitution is silent on the subject of retroactivity; it neither prohibits nor requires retrospective effect. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The standards governing application of the doctrine of nonretroactivity have been succinctly expressed by the United States Supreme Court in Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), where the Court declared:
In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed, ... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Linkletter v. Walker, supra, 381 U.S. at 629, 85 S.Ct. at 1738. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by holding of nonretroactivity. Cipriano v. City of Houma, supra *109 395 U.S. [701] at 706, 89 S.Ct. [1897] at 1900 [23 L.Ed.2d 647 (1969)]. [404 U.S. at 106, 92 S.Ct. at 355, 30 L.Ed.2d at 306]
Of the factors enumerated in Chevron the most important would appear to be reliance. In Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (Lemon I) the Court invalidated, on constitutional grounds, Pennsylvania's statutory program for reimbursement of nonpublic sectarian schools for secular educational services. In Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (Lemon II) the Court declined to apply its decision in Lemon I retroactively, stressing the factor of reliance upon the validity of state law prior to its being declared unconstitutional. In Lemon II Chief Justice Burger observed that "statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and shaping their conduct." 411 U.S. at 199, 93 S.Ct. at 1468, 36 L.Ed.2d at 160.
Chevron's underscoring of reliance continued as a significant feature of retroactivity analysis in Wachovia Bank & Trust v. National Student Marketing, 650 F.2d 342 (D.C. Cir.1980), where the Court of Appeals found Chevron's reliance factor to be the "most fundamental," id. at 347, and concluded that plaintiff was entitled to rely on the law as it was when suit was started. Id. at 348.
The reliance factor has played a significant role in decisions of the New Jersey Supreme Court involving the retroactivity issue. See, e.g., New Jersey Board of Higher Ed. v. Shelton College, 90 N.J. 470 (1982); Salorio v. Glaser, 93 N.J. 447 (1983); Coons v. American Honda Motor Co., 96 N.J. 419 (1984). In each of those cases the Court was influenced by reliance on prior law in declaring its decision to have only prospective effect.
In the case before this court reliance by defendant upon the nonapplicability of FLSA, in accordance with the Supreme Court's decision in National League of Cities, may be reasonably inferred. Certainly, defendant's policies with respect to *110 the hours of work of its police department personnel might have been quite different had Garcia been the law at the time of plaintiff's employment with the borough, particularly in view of the financial straits in which Swedesboro found itself at such time.
Another Chevron factor of importance here is the inequitable results which could be produced if Garcia were retroactively applied. Assuming, without deciding, that plaintiff's standby time should be counted as working time for FLSA purposes, thereby entitling plaintiff to compensation at time-and-a-half rates for a period of 16 months, the financial burden on the municipality would be severe, especially in light of the "cap law," L. 1976, c. 68, N.J.S.A. 40A:4-45.1 et seq., limiting annual increases in municipal budgets to the lesser of 5% or the so-called index rate.[1] Payment of plaintiff's overtime claim could, as a result of the "cap law" result in further cutbacks in other municipal services. In addition, many other municipalities throughout the State could be exposed to similar overtime back-pay claims with equally devastating results. It was precisely this consideration, i.e., the effect on municipal finances, that influenced the New Jersey Supreme Court in its decision to limit the retrospective application of a new rule of law in Rutherford Education Association v. Rutherford Bd. of Ed., 99 N.J. 8 (1985), a case involving the award of tenure and related emoluments to so-called Title 1 teachers. The Court said, in this respect:
There is no question in this case the school boards acted properly and in good faith in relying on prior law. Further, it is unquestioned that applying Spiewak [90 N.J. 63] retroactively would have a substantial impact on the finances of many communities. "Municipal financing is predicated on a pay-as-you-go principle." Lavin v. Hackensack, Bd. of Educ., 90 N.J. 145, 154 (1982). *111 Boards of Education prepare budgets on a cash basis. Presumably, they did not budget for expenses that would arise from a retroactive application of Spiewak. Therefore, providing tenure and its emoluments retroactively would not only have a serious adverse financial effect on the boards of education, but also may have serious consequences on the tax structure of many communities and other community services.... [Id. at 28]
In view of the foregoing I conclude that the application of the FLSA to plaintiff's employment by defendant during the period in issue is governed by National League of Cities and not by Garcia, which will not be retroactively applied. Thus, the FLSA is not applicable to the employment relationship between plaintiff and defendant.
Plaintiff argues, as an alternative to FLSA coverage, that he is entitled to the protection of the New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a et seq. N.J.S.A. 34:11-56a4 provides that every employer shall pay to each of his employees a specified minimum hourly rate for 40 hours of working time in any week and 1 1/2 times the employee's regular hourly wage for each hour in excess of 40 hours in any week. Plaintiff's argument must be rejected. The employment relationship between plaintiff and defendant is governed by a set of specific statutes dealing with municipal police departments.
The first of the specific statutes is N.J.S.A. 40A:14-118[2], which authorizes a municipality to create, by ordinance, a police department and provide for its maintenance, regulation and control and for the appointment and compensation of its officers. Other statutes prescribe the general qualifications of police officers, N.J.S.A. 40A:14-122; prohibit the requirement of residence in the municipality as a condition of employment, N.J.S.A. 40A:14-122.1; provide for a minimum and maximum age for appointment to the police force, N.J.S.A. 40A:14-127; and prescribe a minimum salary for police officers in certain municipalities. N.J.S.A. 40A:14-131. Still other statutes deal with leaves of absence, with or without pay, N.J.S.A. 40A:14-136, *112 137, and payment of accrued vacation pay, N.J.S.A. 40A:14-137.1.
These statutes[3], together with N.J.S.A. 40A:14-133 to be discussed below, comprise a legislative design specifically addressed to municipal police departments and the appointment, compensation, and emoluments of their members. The Wage and Hour Law, on the other hand, is a statute of general application without regard to specific employment in either the public or private sector. It is well settled that, in case of a conflict between general and specific statutes, the latter prevails over the former. Clifford F. MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); Kingsley v. Wes Outdoor Advertising Co., 55 N.J. 336 (1970); State by State Highway Commissioner v. Dilley, 48 N.J. 383 (1967); Hackensack Water Co. v. Tax Appeals Div., 2 N.J. 157 (1949). Thus, the Wage and Hour Law yields in this case to the provisions of N.J.S.A. 40A:14-118 et seq.
The most important statute  and one upon which plaintiff relies  is N.J.S.A. 40A:14-133, which provides:
The days of employment of any member or officer of the police department or force, including any officer having supervision or regulation of traffic upon county roads, parks and parkways shall not exceed 6 days in any one week, except in cases of emergency the officer, board or official in charge of such police department or force shall have authority to retain on duty any member or officer during the period of the emergency, but in any such case and within 12 months thereafter, such member or officer shall be given a day off for each extra day so served by him during the emergency.
It has been stipulated that, for purposes of N.J.S.A. 40A:14-132, -133 and -134, no emergency was either declared or existed in the borough during the period in issue.
*113 Again, assuming without deciding that plaintiff's standby time constituted working time the quoted statute does not help plaintiff. On the contrary, the legislative antecedent to this statute, R.S. 40:47-17, using virtually the same language as in the present law, has been construed to deny policemen's claims for overtime compensation. In Hoboken Local No. 2 etc. v. Hoboken, 23 N.J. Misc. 334 (Sup.Ct. 1945), aff'd o.b. per curiam 134 N.J.L. 616 (E. & A. 1946) plaintiff, as assignee, sought compensation for serving one day in excess of the six days a week prescribed by statute. The court held that policemen are public officials, who, upon accepting a public office with a fixed salary, are bound to perform the duties of the office for the salary so fixed. The court went on to declare that the purpose of the statute is not to create a private right of action but "to protect the health and increase the efficiency of policemen by requiring time off for rest, pleasure and recreation." 23 N.J. Misc. at 338.
The decision in Hoboken Local, having been affirmed by the Court of Errors and Appeals, then the highest court in this State, is binding upon this court. A trial court is bound by decisions of the present or former high tribunal of New Jersey. Wolf v. Home Insurance Co., 100 N.J. Super. 27 (Law Div.), aff'd o.b. per curiam 103 N.J. Super. 357 (App.Div. 1968); Biancardi v. Waldwick Bd. of Ed., 139 N.J. Super. 175 (App.Div. 1976).
It may be argued that the socio-political climate has changed in the last 40 years and that attitudes of 1946 are vastly different from the attitudes of today. One need only look for confirmation of the change to the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., a comprehensive legislative scheme, first enacted in 1968, recognizing the right of public employees, including police officers, to organize and negotiate collectively concerning the terms and conditions of their employment. Nevertheless, it is not the prerogative of this court to speculate as to the effect of such *114 change on the Supreme Court; nor to second guess the direction which that tribunal might take in the future. Tharp v. Shannon, 95 N.J. Super. 298 (Law Div. 1967). Reconsideration of legal doctrine is for the Supreme Court alone, Franco v. Davis, 51 N.J. 237 (1968); and an intention to change a long-established rule will not be imputed to the Supreme Court in the absence of a clear manifestation thereof. Goddard v. Orthopedic Consultant Associates, P.A., 177 N.J. Super. 319 (App.Div. 1981).
In view of the foregoing, the court concludes that plaintiff is not entitled to additional compensation in connection with his employment by defendant. Defendant's counsel will prepare the appropriate judgment in accordance with this opinion and settle it pursuant to R. 4:42-1(b) (the five-day rule).
NOTES
[1] The index rate is defined in N.J.S.A. 40A:4-45.1a as "the rate of annual percentage increase, rounded to the nearest half-percent, in the Implicit Price Deflator for State and Local Government Purchases of Goods and Services, computed and published quarterly by the United States Department of Commerce, Bureau of Economic Analysis."
[2] This statute was amended effective August 24, 1981, a date beyond the period covered by plaintiff's claim for overtime.
[3] Other statutes dealing with employment of police officers are N.J.S.A. 40A:14-132 and N.J.S.A. 40A:14-134. The former statute imposes a limit on hours of employment of eight hours per day and 40 hours per week but only if the municipality adopts an ordinance to that effect. No such ordinance was adopted in this case. The latter statute defines emergency and provides for overtime compensation in lieu of time off.