CRABTREE, J.T.C.
This is an inheritance tax case wherein plaintiffs seek review of defendant’s determination that certain securities registered in decedent’s name were includible in decedent’s estate pursuant to N.J.S.A. 54:34-1(a) as transfers of property by will.
Plaintiffs are the executors under the will of Ali Shayegan, who died on May 11, 1981. The decedent’s will left his entire estate, either outright or in trust, to his surviving spouse, Badri Shayegan. The subject matter of this litigation is a portfolio of marketable securities, valued at $407,059, registered in the decedent's name at the time of his death. The securities were purchased with Badri Shayegan’s funds, which were gifts to her from her family in Iran.
Ali and Badri were born in Iran. Their marriage in 1935 was arranged by Badri’s father, to whom Ali paid a small sum at the time of the wedding. Badri’s father gave her a house and a garden as a dowry. Badri’s family was wealthy; by comparison Ali was a man of modest means.
Ali emigrated to the United States in 1958, followed soon thereafter by Badri and their children.
For the next 20 years, money was remitted from Iran to the Shayegans in the following amounts:
To Ali To Badri
1958-1974 $110,169 $103,145
1975-1980 19,990 670,210
*455 All remittances to Badri were in her maiden name; all such sums were turned over to Ali. The sources of the funds sent to Badri were proceeds from assets left in Iran when the couple emigrated to the United States and a portion of an inheritance received by Badri’s mother. None of the funds in question was a belated payment of a dowry.
Badri’s uncontradicted testimony before a hearing examiner disclosed that she never intended a gift to her husband of the funds turned over to him. In keeping with Iranian custom and tradition Ali exercised exclusive management and control over all accounts (checking, saving and investment), whatever the registration of the accounts might have been, i.e., joint names, his name or her name. Badri admitted that she lacked knowledge about financial matters so she was content to allow Ali to make all the investment decisions. She referred, however, to the sums sent to her as “my own money” and she testified that Ali acknowledged that the money invested belonged to her and that he simply managed it. Ali’s stock broker also testified that Ali acknowledged that the invested sums all came from Badri. Whenever Badri requested money, Ali gave it to her.
Defendant assessed a tax of $18,679.79 with respect to the aforesaid securities portfolio. Plaintiffs have paid the tax in full, plus interest. Plaintiffs argue that the purchase of the securities with the wife’s funds, title being registered in decedent’s name, raises the presumption of a resulting trust in the wife’s favor, with the decedent holding title as a trustee. Plaintiffs contend that the presumption has not been rebutted.
Defendant argues that the facts raise the presumption of an inter vivos gift from the wife to the husband and that this presumption has not been rebutted.
It is well settled that a resulting trust will be declared in favor of the one paying the purchase price of property transferred to another unless it is shown that the payor manifested an intention that no resulting trust should arise. Strong v. Strong, 136 N.J.Eq. 103, 40 A.2d 548 (E. & A.1944); Bacon v. Bacon, 6 N.J. 117, 77 A.2d 802 (1951); Weisberg v. Koprowski, *456 17 N.J. 362, 111 A.2d 481 (1955); Bogert, Trusts & Trustees (2 rev. ed. 1977), § 454. The rule has been applied in an inheritance tax case to support a conclusion that property in a decedent’s name was excluded from the taxable estate to the extent that the purchase money for the property was provided by another. In re Estate of Rauch, 167 N.J.Super. 497, 401 A.2d 271 (App.Div.1979).
The rule raises only a rebuttable presumption, however, designed to provide guidance to the court in determining true intent. Weisberg v. Koprowski, supra 17 N.J. at 371, 111 A.2d 481; Turro v. Turro, 38 N.J.Super. 535, 120 A.2d 52 (App.Div.1956); Exadaktilos v. Cinnaminson Realty Co., Inc., 167 N.J.Super. 141, 400 A.2d 554 (Law Div.1979), aff’d o.b. per curiam 173 N.J.Super. 559, 414 A.2d 994 (App.Div.1980). A contrary presumption, namely, that a gift or advancement was intended and not a resulting trust arises when certain relationships, such as blood or marriage, exist between the payor and the transferee. Weisberg v. Koprowski, supra 17 N.J. at 372, 111 A.2d 481. The presumption of a gift, when such a relationship is present, supersedes the presumption of a resulting trust and casts the burden of proof upon the party attempting to establish the trust. Turro v. Turro, supra 38 N.J.Super. at 540-542, 120 A.2d 52; Exadaktilos v. Cinnaminson Realty Co., Inc., supra 167 N.J.Super. at 148, 400 A.2d 554; Restatement, Trusts 2d, §§ 442, 443. Thus, when a husband purchases property in the name of his wife a gift is presumed. Strong v. Strong, supra; Bacon v. Bacon, supra. A different rule applies where title to property purchased with the wife’s funds is placed in the husband’s name. In that case no gift is presumed and the husband presumptively holds the property in resulting trust for his wife. Van Inwegen v. Van Inwegen, 4 N.J. 46, 71 A.2d 340 (1950); Rayher v. Rayher, 14 N.J. 174, 101 A.2d 524 (1953); Graham v. Onderdonk, 33 N.J. 356, 164 A.2d 749 (1960).
Bogert explains why courts have established an exception to the resulting trust rule when the husband is the payor and his wife the grantee of property:
*457 ... equity takes the position that the normal, reasonable inferred intent arising from the mere purchase and form of the [title] is an intent to make a gift to the wife. The court takes cognizance of the legal and moral duty of a husband to support his wife and of the high degree of love and affection usually running from husband to wife, recognizes that gifts from husbands to wives are well known to be of common occurrence, ... It is human experience of a well established character that voluntary transfers from husbands to wives are frequently made, either to provide the wives with the means of subsistence, or out of pure generosity of the husband, or by way of distribution of an estate in anticipation of death. An unexplained direct transfer, therefore, may be naturally attributed to a gift motive. The court probably also takes into consideration that the husband is often better qualified to manage property than the wife, and that there is a consequent unlikelihood of a desire on his part to use his wife as a trustee or manager of his property. [Bogert, op. cit., supra, § 460 at 727-728]
In Weisberg v. Koprowski, supra, Justice Brennan, after stating- the black-letter resulting trust principle, observed:
However, where one of certain relationships, usually of blood or marriage, exists between the payor and the transferee, the inference to be drawn is not of resulting trust but of gift or advancement, and the burden is upon him who claims a resulting trust to show that the payor manifested an intention that the transferee should not have the beneficial interest in the property. The modern test of relationship which will raise an inference of gift is whether the transferee is a natural object of the bounty of the payor. Restatement, supra, pp. 1355 et seq.; 3 Scott Trusts (1939), p. 2256 et seq. Thus, a gift or advancement is presumed where a husband takes title in the name of his wife, Lipp v. Fielder, 72 N.J.Eq. 439 [ 66 A.2d 189] (E. & A.1907); Gorrell v. Gorrell, 97 N.J.Eq. 367 [ 127 A. 346] (E. & A.1925), or a father in the name of his son, Brower v. Brower, 98 N.J.Eq. 218 [ 130 A. 222] (Ch.1925), affirmed 99 N.J.Eq. 414 [ 131 A. 918] (E. & A.1926), or a stepfather in favor of a stepchild, Mott v. Iossa, 119 N.J.Eq. 185 [ 181 A. 689] (Ch.1935).
But the usual inference of a resulting trust and not of a gift is said to arise where the wife is payor and takes title in the name of her husband, or, as in the instant case, where the child purchases the property and takes title in the name of his parent. Pinkinson v. Pinkinson. 93 N.J.Eq. 583 [117 A. 48] (Ch.1922); Restatement, supra, sec. 442, comment (a), pp. 1356-6.
Most authorities are agreed that the application of the rule inferring a gift to a transferee related to the payor is not to be determined on considerations of the closeness of the relationship or the extent of natural affection, nor by reason of any legal obligation to furnish support. As Professor Scott has observed, Scott, supra, p. 2259, closeness of the relationship or the extent of natural affection is an unsatisfactory test. “It cannot be laid down as a rule of law that husband have a greater affection for their wives than wives have for their husbands ...” [ 17 N.J. at 372, 111 A.2d 481]
Defendant alludes to the quoted language and relies upon Weisberg to support his conclusion that “the modern test,” which reflects “common human impulses,” is whether the *458 grantee is the natural object of the payor’s bounty. Defendant then points to the facts in this case which, he claims, support a conclusion that such test has been met.
Weisberg does not provide the cogent precedent urged upon this court by defendant. To begin with, the issue in that case was the application of resulting trust principles to transactions between parent and child, not husband and wife, so the court’s observations about the “modern test,” in so far as they pertained to spouses, were dicta; and while Supreme Court dicta is entitled to great weight, it is not binding upon lower courts. Lehigh Valley R.R. Co. v. Chapman, 35 N.J. 177, 187, 171 A.2d 653 (1961); Beirne v. Gangemi, 74 N.J.Super. 557, 181 A.2d 800 (App.Div.1962). Secondly, the application of Badri’s funds to purchase securities in her husband’s name does not lead ineluctably to the conclusion that the transaction was a gift to the natural object of her bounty, actuated by common human impulses. It is just as reasonable to conclude that Badri’s fealty to Iranian custom and tradition, i.e., that the husband managed and controlled all the property in the family, coupled with her recognition that she knew little of financial matters and relied upon Ali in this regard, motivated the transfer to the same extent as her affection for her husband. Also, management and control is not tantamount to beneficial ownership. Indeed, management and control are reposed, facially at least, in the trustee of a resulting trust, with the trustee holding legal title for the benefit of another.
Defendant also argues at some length that Mrs. Shayegan and the estate are bound by the form of the transaction chosen by the Shayegans and that Mrs. Shayegan must therefore accept the tax consequences that follow from her choice. Defendant cites In re Estate of Vondermuhll, 156 N.J.Super. 531, 384 A.2d 185 (App.Div.1978), Somerset Apts. v. Taxation Div. Director, 134 N.J.Super. 550, 342 A.2d 520 (App.Div.1975) and General Trading Company v. Taxation Div. Director, 83 N.J. 122, 416 A.2d 37 (1980) in support of his position. To be *459 sure, taxpayers must accept the tax consequences of their conduct and decisions. At issue in the case sub judice, however, is not the consequence of Badri’s action in the transfer of property to her husband but the legal effect of the transfer. Defendant’s argument in this regard is thus irrelevant.
I conclude from the foregoing that the use of Badri Shayegan’s own funds to purchase marketable securities in the decedent’s name gave rise to a presumption that a resulting trust existed in Badri’s favor with respect to those securities. That presumption has not been overcome by defendant in this case, nor has it been overborne by a contrary presumption of gift from wife to husband. Notwithstanding dicta in Weisberg and the criticism of erudite commentators, the rule that a presumption of gift does not arise from transfers from wife to husband, whereas it does arise from husband-to-wife transfers, remains the law in New Jersey. Arguably, changes in social attitudes, undergirded by the total abolition of legal disabilities, have promoted equality between the sexes. Thus, the reasons for different legal rules governing transactions between spouses have disappeared. The fact remains, however, despite apparently contrary dicta in Weisberg, that the presumption of resulting trust, and not gift, still arises from wife-to-husband transfers. New Jersey Supreme Court decisions in Van Inwegen, Rayher and Graham all remain binding on this court. As the court said in Perry v. Swedesboro, 204 N.J.Super. 103, 497 A.2d 922 (Law Div.1985), aff’d per curiam 214 N.J.Super. 488, 520 A.2d 410 (App.Div.1986):
Nevertheless, it is not the prerogative of this court to speculate as to the effect of ... change on the Supreme Court; nor to second guess the direction which that tribunal might take in the future ... Reconsideration of legal doctrine is for the Supreme Court alone, ...; and an intention to change a long-established rule will not be imputed to the Supreme Court in the absence of a clear manifestation thereof. [ 204 N.J.Super. at 113-114, 497 A. 922]
The parties will submit computations pursuant to R. 8:9-3, following which judgment will be entered.